JOHN R. PETERSON *et al.*, Plaintiffs-Appellees, v. MONSANTO COM-PANY *et al.*, Defendants (Monsanto Company, Appellant).

Fifth District   No. 5—86—0613

Opinion filed June 16, 1987.

Richard A. Mueller, Paul A. Streiff, and Michael D. Quinlan, all of Coburn, Croft & Putzell, of Belleville, for appellant.

Patrick S. O'Brien, of Pratt & Callis, P.C., of East Alton, for appellees.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Thirty-two plaintiffs filed a multicount complaint against defendants Monsanto Company and The Dow Chemical Company in the circuit court of Madison County to recover compensatory and punitive damages because of injuries received when exposed to herbicides manufactured and sold to Union Electric Company and Arkansas-Missouri Power Company. Thirty plaintiffs are past or present employees of Union Electric Company and in a few instances, Arkansas-Missouri Power Company. Two are the wife and daughter of one of the employees. All plaintiffs are residents of the State of Missouri. The actions are based on product liability and, generally, willful concealment from the plaintiffs of the dangerous and permanent effects of "dioxin" contained in the herbicides. Monsanto Company, the only party to this appeal, responded by filing a motion to transfer for improper venue under section 2—104 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—104). Monsanto Company was granted leave to appeal under Supreme Court Rule 306(a)(1)(iv) (103 Ill. 2d R. 306(a)(1)(iv)) from the denial of the motion.

Monsanto Company is a Delaware corporation authorized to transact business in Illinois. Its principal place of business is St. Louis, Missouri. It maintains no registered office in Madison County. Under sections 2—101 and 2—102(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—101, 2—102(a)), it is subject to suit only in a county where it is "doing business" or "in the county in which the transaction or some part thereof occurred out of which the cause of action arose."

The essential factual allegation of each complaint, with the exception of those of the wife and daughter of the plaintiff Bettis, is that each plaintiff while an employee of Union Electric Company or Arkansas-Missouri Power Company, "engaged in spraying and/or other duties in support of said spraying, and/or was required to work

in areas that had recently been sprayed with herbicides manufactured, distributed and sold by the defendants, and thereby became exposed to the chemical contaminant commonly known as 'Dioxin'." In the case of the wife and daughter of Bettis, the complaints allege that they were exposed to the clothing and person of Bettis contaminated with dioxin. The dioxin is alleged to have been contained within the herbicide 2,4,5 trichlorophenoxyacetic acid (2,4,5-T), manufactured and sold from approximately 1960 through 1979.

■ The trial court did not specify the basis for its ruling in denying defendant's motion to transfer to proper venue. If it based its decision on the factual finding that Monsanto was doing business in Madison County, we conclude this finding was contrary to the manifest weight of the evidence. See *Blakey v. Commonwealth Edison Co.* (1977), 52 Ill. App. 3d 454, 367 N.E.2d 529.

The evidence is conclusive that Monsanto maintains no warehouse, regional office or sales office in Madison County, nor does it engage in the direct sale of its products to consumers, although its salesmen at times solicit sales of industrial chemicals to Madison County accounts. It does not finance dealer purchases or engage in cooperative advertising with dealers. Admittedly its products are sold in Madison County through dealers but one would suppose that its products are sold by dealers throughout the United States. It could not be contended that this circumstance alone is significant for purposes of fixing venue.

■ It is established under *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88, that in order to fix venue in a county, "quantitatively more business activity within the county must be demonstrated than where the question is whether the defendant has transacted any business within the State for purposes of service of process ***. The defendant must, in short, be conducting its usual and customary business within the county in which venue is sought." (67 Ill. 2d 321, 329, 368 N.E.2d 88, 92.) Plaintiffs argue that defendant is conducting its usual and customary business in Madison County because an employee, Carl Wiedner, resides there and works out of his residence. Plaintiffs argue that Wiedner is "maintained" by defendant in Madison County. Wiedner is not "maintained" in Madison County by defendant. He resides there because of personal choice. His work is directed from the Decatur office. Monsanto does not pay any part of his home expenses or require his residence there. He does no direct selling of Monsanto's products, nor does he solicit orders, but only engages in promotional activities, principally with farmers, not only in Madison County but also in St. Clair, Bond and Clinton

counties. Even if he solicited sales, such activities by the B&O's district sales manager in Madison County were not considered a significant factor in determining whether the B&O was transacting business in Madison County in *Mosele*. Monsanto's contacts with Madison County are not as extensive as those of International Harvester in the forum county in *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011, and *Gardner v. International Harvester Co.* (1986), 113 Ill. 2d 535, 499 N.E.2d 430, where the supreme court further refined the concept of doing business for venue purposes. In both these cases the court concluded that International Harvester was not doing business for purposes of venue.

Stambaugh* and *Gardner* cited with approval this court's decision in *Hartung v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 816, 443 N.E.2d 16, where we held that the occasional purchase of materials and services in a county was not doing business for venue purposes. Wiedner's activities in Madison County are only incidental to Monsanto's usual and customary business.

This is not like *Weaver v. Midwest Towing, Inc.* (1986), 139 Ill. App. 3d 1075, 487 N.E.2d 1259, where defendant merely asserted in a conclusory manner that it was not doing business in the forum county. Here Monsanto supplied uncontroverted evidence that its activities in Madison County were not its usual and customary business under the test of *Mosele, Stambaugh* and *Gardner*.

Venue may also be laid in Madison County under section 2—101(2) of the Code of Civil Procedure if "the transaction or some part thereof occurred" in Madison County. (Ill. Rev. Stat. 1985, ch. 110, par. 2—101(2).) Thirty-two plaintiffs have joined their actions in separate counts in a single complaint. While the rules of permissive joinder allow such a procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—404), for purposes of venue, these counts must be considered separate actions and each plaintiff must establish that "the transaction or some part thereof" occurred in Madison County as to him individually when venue is premised on section 2—101(2) of the Act. (See 2 C. Nichols, Illinois Civil Practice sec. 917, at 115 (1979).) Logic dictates, and plaintiffs do not argue otherwise on appeal, that the occurrence of an exposure to the herbicide as to one or several plaintiffs in Madison County would not justify the joinder of a plaintiff who was never exposed in Madison County.

In response to interrogatories, 14 plaintiffs, including the wife and daughter of Bettis, answered that their exposure did not occur in Madison County but was limited to Missouri, or specific Illinois counties other than Madison County. The remaining 18 plaintiffs answered

that their spraying or work activities took place in various Missouri and unspecified Illinois counties including Madison County. The answers of these plaintiffs were general and nonspecific. The interrogatories requested each plaintiff to identify the place, county and State, where he "engaged in spraying or other duties or work" and was allegedly exposed to dioxin. The answers referred to the Union Electric Company records for specific details regarding the work experience of each plaintiff.

It was established through discovery that Union Electric Company kept in the ordinary course of business since 1955 detailed records of herbicide spraying activities on the right-of-way of its transmission lines. A chemical treatment report was prepared by the line crew after each herbicide application. These reports identified the crew by name, the type of herbicide and the name and location of the line. These reports are kept at the transmission department's office at Rivermines, Missouri, in a manner that facilitates the examination of the reports for each transmission line. A detailed examination of these reports for all the Union Electric lines in Madison County revealed that only five plaintiffs ever engaged in herbicide spraying in Madison County. Noah Chaney applied 2,4,5-T herbicide a total of five days during his employment for the years 1957-1978; Carl Cox for two days during the years 1973-1978; Karl Kluba for one day during the years 1966-1984; James Politte for one day during the years 1972-1979; and Russell Stagner for one day during the years 1966-1978.

The record establishes that only five plaintiffs had contact with 2,4,5-T in Madison County during herbicide spraying. Plaintiffs argue that they may have been present in the area of these transmission lines during the course of their employment with Union Electric Company at other than times when herbicide was sprayed and could have come in contact with 2,4,5-T at these times. No affidavits contradicting or expanding on the detailed records of Union Electric Company or supplementing the answers to interrogatories were offered by plaintiffs. Most plaintiffs simply referred to the Union Electric Company records to establish the precise times of their presence in Madison County. Section 2—104(c) of the Code of Civil Procedure states that the trial court may consider affidavits submitted by the parties and "any competent evidence adduced by the parties" (Ill. Rev. Stat. 1985, ch. 110, par. 2—104(c)) in ruling on motions to transfer to proper venue.

■ When a defendant contests the propriety of venue in a particular county the burden is on the plaintiff to establish the propriety of venue by the production of credible factual evidence in the trial court.

No Illinois case directly addresses the question of burden of proof; however, certain language in *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011, suggests that when a defendant is sued in a county other than the county of his residence, the burden is on the plaintiff to establish his privilege to bring his action in such a county. This appears to be the accepted rule. See 77 Am. Jur. 2d *Venue* sec. 79 (1975).

In *Stambaugh* the court cited with approval *Winn v. Vogel* (1952), 345 Ill. App. 425, 430-31, 103 N.E.2d 673, 675-76, and *Blakey v. Commonwealth Edison Co.* (1977), 52 Ill. App. 3d 454, 456, 367 N.E.2d 529, 531. Both cases would support the rule referred to that when a defendant is sued in other than the county of his residence, the burden is on the plaintiff to establish some exception that affords him the privilege to bring the action in such other county. *Stambaugh* further observed that the venue statute is to be liberally construed to effect rather than defeat a change of venue. *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 261, 464 N.E.2d 1011, 1016.

■ The principle of convenience embodied in the venue statute is governed by considerations of convenience to the defendant. We believe it is not sufficient for the plaintiffs to simply argue that they might have been in Madison County on the right-of-way of Union Electric Company at some other time unrelated to herbicide spraying. They relied on the work records of Union Electric to establish their work experience in Madison County. They had the opportunity to refute the affidavits of Monsanto but chose to rely on the general answers in their answers to interrogatories. The credible evidence supports the conclusion only five plaintiffs can be said to have been in Madison County when some part of the transaction giving rise to their cause of action occurred.

Plaintiffs' reliance on *Wier v. Ketterer* (1985), 133 Ill. App. 3d 751, 479 N.E.2d 416, is misplaced. There it was established that a specific part of the transaction giving rise to plaintiff's cause of action occurred in the forum county.

■ As to the five plaintiffs who performed work for Union Electric in Madison County, the evidence establishes that Chaney sprayed herbicide in Madison County five days of a total of 470 applications when he performed the same work in other Missouri and Illinois counties; Cox two days of a total of 25 applications; Kluba one day of a total of 43 applications; Politte one day of a total of 49 applications; and Stagner one day of a total of 168 applications. Monsanto argues that the minimal use of the herbicide in Madison County is insufficient to bring their actions within section 2—101(2) to constitute a "part"

of the transaction out of which their causes of action arose.

Defendant cites no authority to support such a narrow reading of the venue statute and we decline to adopt such a construction. "Part" of the transaction did occur in Madison County for these five plaintiffs. Admittedly no specific accident or exposure is alleged to be the cause of these plaintiffs' injuries. Nonetheless, we decline to give the venue statute this narrow interpretation in the absence of authority, although the principle of convenience discussed in the cases cited may suggest the desirability of such a construction.

The judgment of the circuit court of Madison County is reversed as to all plaintiffs except Chaney, Cox, Kluba, Politte and Stagner, and the cause is remanded for allowance of defendant's motion to transfer to proper venue as to other plaintiffs.

Reversed in part, affirmed in part and remanded with directions.

KASSERMAN and HARRISON, JJ., concur.