DAVID L. REYNOLDS, on Behalf of Himself and All Others Similarly Situated, Plaintiffs-Appellees, v. GMAC FINANCIAL SERVICES, a/k/a General Motors Acceptance Corporation, Defendant-Appellant.

Fifth District   No. 5—02—0667

Opinion filed November 3, 2003.—Motion to publish granted November 20, 2003.

Scott W. Fowkes and Bevin M. Brennan, both of Kirkland & Ellis, of Chicago, Nelson L. Mitten, of Riezman Berger, P.C., of St. Louis, Missouri, and Stephen C. Mudge and Martin K. Morrissey, both of Reed, Armstrong, Gorman, Mudge & Morrissey, of Edwardsville, for appellant.

Paul M. Weiss and Tod A. Lewis, of Freed & Weiss, L.L.C., of Chicago, Timothy F. Campbell, of Campbell & Brinkley Law Offices, of Godfrey, and L. Thomas Lakin, Bradley M. Lakin, Daniel J. Cohen, and Jeffrey A.J. Miller, all of Lakin Law Firm, P.C., and Charles W. Chapman, of Charles W. Chapman, Chtrd., both of Wood River, for appellees.

JUSTICE WELCH delivered the opinion of the court:

The defendant, GMAC Financial Services, also known as General Motors Acceptance Corp., appeals from an order of the circuit court of Madison County denying its motion to transfer venue to Macoupin County. For the reasons that follow, we affirm.

## I. Facts

The facts relevant to our resolution of this appeal are as follows. On December 18, 2002, the circuit court of Madison County granted David L. Reynolds, a Madison County resident, leave to file a third amended class action complaint against the defendant. The complaint sounded in three counts for breach of contract, statutory fraud, and consumer fraud. Essentially, the suit alleges that the defendant, a finance company, conspired with automobile dealers in overcharging customers for certain "add-ons" purchased by customers when financing their vehicles. These "add-ons" include credit life insurance, credit disability insurance, and extended service warranties. When Reynolds purchased a vehicle, he opted to purchase some "add-ons." The form contract he signed set forth an amount charged for the "add-ons" under the category of "Other Charges Including Amounts Paid to

Others on Your Behalf." According to Reynolds, however, the amount listed in the contract was not the amount actually paid to "others" on his behalf. Reynolds claims that a portion of that amount was kept by the defendant and split with the dealers. Reynolds filed a class action suit on behalf of all persons (hereinafter, the plaintiffs) who, on or after April 4, 1991, purchased an "add-on" at the time they purchased a vehicle, signed a form contract similar to the one signed by Reynolds, and had the contract assigned to the defendant.

On June 4, 2001, after the plaintiffs had filed their initial complaint but prior to any subsequent amendments, the defendant filed a motion to transfer venue. The defendant claimed that venue was not proper in Madison County because Reynolds had not purchased his vehicle there and Reynolds had not entered into a contract there. The defendant claimed that the vehicle was purchased in Macoupin County and that the defendant accepted the assignment of the contract in St. Louis County, Missouri. The defendant further claimed that it does not enter into any contracts in Madison County, that it does not have a registered office or other office in Madison County, and that it does not do business in Madison County for purposes of satisfying the venue statute. The defendant requested that venue be transferred to Macoupin County, where the defendant has a place of business and where the vehicle was purchased.

In support of its motion, the defendant attached a one-page affidavit from Michael Boyle, an operations manager. The affidavit claimed that the defendant does not have any offices, sales agents, or employees located in Madison County, that the defendant does not enter into any contracts in Madison County, that dealers who request financing for their customers must submit any contracts to offices in St. Louis County, Missouri, that if the contracts are accepted, they are accepted in St. Louis County, that the defendant does not receive any money or commission from the sale of any credit life or disability insurance policies, that the defendant merely finances the purchases of such insurance by those customers who request the defendant to provide financing for the purchase of such policies, and that neither the defendant nor any of its affiliates have any involvement in the sale or underwriting of such insurance.

The plaintiffs filed a brief opposing the defendant's motion to transfer. The plaintiffs claimed that a part of the transaction occurred in Madison County and that the defendant is "doing business" in Madison County for purposes of the venue statute. The plaintiffs attached an affidavit from David Reynolds, wherein he stated that he received a payment book or statement at his Madison County residence from the defendant and that he made a payment to the defendant

from his Madison County residence on a draft from a bank located in Madison County with money that he earned in Madison County. Reynolds also claimed that the vehicle he purchased and financed through the defendant was housed in Madison County.

In addition to this affidavit, the plaintiffs attached two separate depositions from representatives of the defendant. The first was from Kevin Bosch, who is responsible for approving credit and supervising the discounting of contracts. Bosch testified that the defendant enters into contracts with automotive dealers in Madison County. Bosch also testified that the defendant and the dealers in Madison County exchange funds monthly depending on the amount of finance income generated during that month. Bosch stated that the amount generated is the difference between the defendant's discounted interest rate and the rate the dealer contracted with the retail customers. In addition, Bosch testified that the defendant notifies customers in Madison County when they are delinquent in payments and that, in some cases, it may hire somebody to repossess the vehicle. Bosch also indicated that the defendant may sue the delinquent party in Madison County circuit court.

Bosch testified that since 1991, a total of 21,797 Madison County residents have financed their vehicles through the defendant. Bosch's testimony does not reveal how much revenue was generated from these contracts. The plaintiffs speculate that it was roughly $217 million (a number derived from the plaintiffs' assumption that each loan averaged 36 months and $10,000).

Susan Klyasheff, a wholesale administrative analyst, was also deposed. She testified that during the previous 10 years, the defendant had been involved in wholesale security agreements with dealers in Madison County that included financing a dealer's inventory, real estate, equipment, working capital, and revolving lines of credit. Klyasheff offered no monetary figures revealing the financial extent of their involvement.

On July 25, 2002, the defendant's motion to transfer venue was argued before the circuit court of Madison County. On September 6, 2002, the circuit court denied the defendant's motion. In so doing, the circuit court found, *inter alia*, as follows: "[A]s evidenced by the deposition testimony of [the defendant's] employees, [the defendant] is, *inter alia*, in the business of making loans *and* collecting the principal and interest on these loans, from Madison County residents [and] on financial instruments written from Madison County banks." (Emphasis in original.) The circuit court concluded that this is sufficient to satisfy the "doing business" requirement of the venue statute. The circuit court also ruled that at least some part of the transaction occurred in Madison County. The defendant now appeals.

On appeal, the defendant contends that the circuit court erred in denying its motion to transfer venue from Madison County to Macoupin County. We believe that the circuit court's denial of the defendant's motion to transfer was appropriate. We affirm on the basis that the defendant has failed to show that it was not "doing business" in Madison County for purposes of venue. Accordingly, as will be explained below, venue is proper in the challenged county if a defendant corporation is "doing business" in that challenged county. Because we affirm on the ground that the record does not establish that the defendant was not "doing business" in Madison County, our analysis shall primarily concentrate on this element of the venue statute.

## II. Standard of Review

■ We must begin by setting forth the appropriate standard of review. As both parties point out, there is currently a conflict in this court regarding the proper standard of review to apply for the review of a lower court's decision to deny a motion to transfer venue. See *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 339 (2003) (applying a *de novo* standard of review); *Southern & Central Illinois Laborers' District Council v. Illinois Health Facilities Planning Board*, 331 Ill. App. 3d 1112, 1115 (2002) (applying an abuse-of-discretion standard of review). Based upon our understanding of the venue statute, we believe that the proper standard of review is *de novo*. See *Boxdorfer*, 339 Ill. App. 3d at 339; *Reichert v. Court of Claims*, 327 Ill. App. 3d 390, 393 (2002), *vacated on other grounds*, 203 Ill. 2d 257 (2003).

## III. Analysis

■ The venue statute, sections 2—101 through 2—114 of the Code of Civil Procedure, specifically provides in part as follows:

> "[E]very action *must be* commenced (1) in the county of residence of any defendant who is joined in good faith *** or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added.) 735 ILCS 5/2—101 (West 2002).

The residency requirement of a corporation is set forth in section 2—102(a) and provides:

> "Any private corporation *** is a resident of any county in which it has its registered office or other office or is doing business." 735 ILCS 5/2—102(a) (West 2002).

"Doing business" in a county has been defined as a defendant "conducting its usual and customary business" in a county such that the defendant's activities are of " 'such a nature so as to localize the

business and make it an operation within the district.' [Citation.]" *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 329-30 (1977).

■ When filing a motion to transfer venue, the defendant has the burden of proving that venue is improper. *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987). The defendant must set forth specific facts that show that venue is not proper in the requested forum. *Weaver*, 116 Ill. 2d at 285. Any inconsistencies and doubts in the record will be resolved against the defendant. *Weaver*, 116 Ill. 2d at 285.

■ In the instant case, we believe that the defendant has failed to establish that it is not doing business in Madison County. As stated above, "doing business," for purposes of venue, is satisfied where the defendant is " 'conducting its usual and customary business within the county in which venue is sought' " and the defendant's activities are of "such a nature as to localize the business and make it an operation within the county." *Long v. Gray*, 306 Ill. App. 3d 445, 451 (1999), quoting and citing *Mosele*, 67 Ill. 2d at 329-30. Accordingly, for the defendant in the instant case to prevail, it must show that it is not conducting its usual and customary business within Madison County and that its activities are not of such a nature as to localize the business and make it an operation within Madison County.

■ Decisions by the Illinois Supreme Court have revealed that many activities performed by a defendant corporation within a certain county will not automatically constitute "doing business" within that county for purposes of venue. These activities include the following: soliciting business within a challenged county, selling goods and services to customers in a challenged county (*Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 292 (1990)), purchasing goods from suppliers in a challenged county, allowing independent dealers to sell a defendant's products in a challenged county, requiring independent dealers to perform warranty work in a challenged county, or sending rebate payments to residents of a challenged county. *Gardner v. International Harvester Co.*, 113 Ill. 2d 535, 541 (1986).

The major factors in the determination of whether a company is "conducting its usual and customary business within the county in which venue is sought," thereby "localiz[ing] the business and mak-[ing] it an operation within the county," seem to be the nature of a company's business and the amount of business that the company generates in comparison to the amount of business generated by a company as a whole. For example, in *Gardner* and *Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250 (1984), the defendant, International Harvester Company (Harvester), challenged venue in St. Clair County after being sued there for damages arising from a defective fuel cap on a tractor. Harvester was in the business of manufactur-

ing tractors and the fuel caps, had a registered office in Chicago, and had a number of manufacturing plants in Illinois but none in St. Clair County. *Stambaugh*, 102 Ill. 2d at 256; *Gardner*, 113 Ill. 2d at 537-38. The plaintiff in each case claimed that venue was appropriate because Harvester was doing business in St. Clair County.

The record revealed that Harvester had sales of over $2 million to St. Clair County dealers. However, this was "an insignificant fraction of its total sales." *Stambaugh*, 102 Ill. 2d at 259 (finding that $2.6 million in sales of its products to St. Clair County dealers constituted approximately five-hundredths of 1% of its annual sales volume). Furthermore, only a small portion of its total sales occurred in St. Clair County. Accordingly, because Harvester is in the business of manufacturing and selling certain items and none of the manufacturing plants were in St. Clair County and only a small portion of the sales occurred in St. Clair County, the Illinois Supreme Court held that the evidence had not established that Harvester was "doing business" in St. Clair County for purposes of the venue statute.

In *Bucklew*, the defendants, G.D. Searle & Company and Searle Pharmaceuticals, Inc., challenged venue in St. Clair County after being sued there for damages arising from an intrauterine device that had been designed, manufactured, and sold by Searle. *Bucklew*, 138 Ill. 2d at 285. The record did not demonstrate that the intrauterine device had been designed or manufactured in St. Clair County. Furthermore, the parties agreed that the defendants did not maintain an office in St. Clair County but employed two representatives to call on health care providers in St. Clair County. The representatives constituted less than 0.4% of Searle's national sales force. *Bucklew*, 138 Ill. 2d at 291. Furthermore, the defendants sold $289,760 worth of products to customers in St. Clair County, which represented a mere 2.5% of Searle's sales in Illinois and 0.12% of Searle's national sales in 1986. These numbers were slightly higher in 1987. *Bucklew*, 138 Ill. 2d at 292. Because the defendants were in the business of manufacturing and selling the intrauterine device and the device had not been designed or manufactured in St. Clair County and only a small portion of the company's sales of that device occurred in St. Clair County, the defendants were held not to be doing business in St. Clair County. *Bucklew*, 138 Ill. 2d at 294.

In *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321 (1977), the defendant, the Baltimore and Ohio Railroad Company, a company that operates railroad facilities, was sued in Madison County for personal injuries that had arisen in 32 cases. *Mosele*, 67 Ill. 2d at 325. It operated railroad facilities and maintained 19 offices in Illinois, but none in Madison County. The defendant solicited business from Madison

County, generating "substantial revenue" from Madison County. *Mosele*, 67 Ill. 2d at 326. However, the supreme court did not reveal how much of its total business was derived from Madison County. The supreme court looked only at the activities of the defendant's district sales manager and noted that they were merely incidental to the solicitation of business. *Mosele*, 67 Ill. 2d at 334. The record reveals that the freight which resulted from the solicitation was delivered to the defendant at points outside Madison County, and little evidence demonstrated that the defendant engaged in substantial activities within Madison County.

■ The facts set forth in the instant case pale in comparison to those supreme court cases cited in support of the defendant's argument on appeal. In the instant case, the defendant supports its claim that venue is improper under the "doing business" element with a one-page affidavit. The affidavit sets forth very few facts or data and provides general conclusions such as, "[The defendant] does not enter into any contracts in Madison County," "[The defendant] does not receive any money or commissions from the sale of any credit or disability insurance policies," and "[The defendant] merely finances the purchases of such insurance by those customers who request [the defendant] to provide financing for the purchase of such policies." On the other hand, the plaintiffs submit two affidavits from the defendant's employees revealing that the defendant is engaged in a substantial amount of business in Madison County. The depositions reveal that the defendant had purchased finance contracts from 21,797 Madison County residents since 1991 and that the defendant contracts with dealers in Madison County for financing purposes. In addition, the depositions reveal that each month the defendant and dealers in Madison County exchange money generated from income derived from these financing contracts, that the defendant has been involved in wholesale security agreements with dealers in Madison County to finance dealer inventory, loans for real estate, loans for equipment, and loans for working capital. Because the record is unclear on exactly how much of the defendant's total business is conducted in Madison County, any doubts in the record must be resolved against the defendant. *Weaver*, 116 Ill. 2d at 285.

## IV. Conclusion

Accordingly, because the undisputed record fails to support the defendant's claim that it is not "doing business" in Madison County for purposes of the venue statute, the circuit court acted properly in

denying the defendant's motion to transfer venue. For the foregoing reasons, we affirm.

Affirmed.

HOPKINS, P.J., and KUEHN, J., concur.