# Illinois Official Reports

## Appellate Court

---

### *Tabirta v. Cummings*, 2019 IL App (1st) 172891-B

---

| | |
|---|---|
| Appellate Court Caption | SERGIU TABIRTA, Plaintiff-Respondent-Appellee, v. JAMES J. CUMMINGS and GLISTER MARY LEE CORPORATION, Defendants-Petitioners-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-17-2891 |
| Filed | March 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-12605; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jason D. Guerra, Ted L. Perryman, and Steven A. Ahillen, of St. Louis, Missouri, for appellants.<br><br>Gregory A. Patricoski and Mark G. Patricoski, of Patricoski Law Offices, of Wheaton, for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justices Mason and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Sergiu Tabirta filed a negligence action in Cook County, Illinois, against James Cummings and Glister Mary Lee Corporation (GML) after sustaining injuries in a vehicle accident that occurred in Ohio. Defendants, in turn, challenged Tabirta's chosen venue because the accident did not occur in Cook County and neither defendant admitted to being a "resident" of the county as required by the Illinois venue statute. The circuit court denied defendants' motions to change venue, and defendants have appealed the court's ruling. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3    On December 13, 2016, at approximately 2:20 p.m., a tractor trailer driven by Cummings collided with the commercial truck that plaintiff[1] was driving near mile post 168 on Interstate Road 71, a public highway located in Delaware County, Ohio. At the time of the accident, the tractor trailer that Cummings was operating was owned by GML, a Missouri corporation that manufactures, sells, and delivers private-label nonperishable food items and has its principal place of business located in Randolph County, Illinois. Tabirta suffered multiple serious injuries as a result of the accident, including the amputation of both of his legs.

¶ 4    Following the accident, Tabirta brought suit against Cummings and GML. Tabirta alleged in pertinent part that Cummings was negligent in the manner in which he operated the tractor trailer. Tabirta further alleged that Cummings was an agent of GML at the time of the accident, and thus he sought to hold the company accountable pursuant to an agency theory of liability. Tabirta, a resident of Cook County, Illinois, filed his suit in Cook County. He mistakenly identified GML as an Illinois corporation with its principal place of business in Cook County, Illinois.

¶ 5    In response, GML filed a motion to dismiss Tabirta's lawsuit on the grounds that it was not initiated in a proper venue. Alternatively, GML requested that Tabirta's suit be transferred to an appropriate venue. In support of its motion, GML argued: "Defendant James Cummings does not reside in Cook County, Illinois. Defendant GML does not own or lease any property in Cook County, does not have a registered office/agent in Cook County, and does not conduct its usual and customary business in Cook County." Given that the vehicle accident that precipitated Tabirta's lawsuit did not occur in Cook County, Illinois, and that neither defendant resided in Cook County, Illinois, GML argued that the requirements of the Illinois venue statute were not satisfied.

¶ 6    In support of its motion, GML attached an affidavit completed by Michael Heffernan, the company's transportation safety and risk manager. In his affidavit, Heffernan averred that GML is a Missouri corporation with its registered agent and principal place of business located at "1037 State Street, Chester, Illinois, 62233, County of Randolph." Heffernan further averred that GML does not own or lease any real property or office space in Cook County and does not have an authorized agent in Cook County. Heffernan also stated that GML "does not conduct its usual and customary business within Cook County, Illinois," and

_____
[1]At the time of the accident, plaintiff was an employee of GT Express and was operating a truck owned by that company.

- 2 -

expressly denied that GML designs, manufactures, advertises, or finances its products from within Cook County. Finally, Heffernan averred that GML's "annual sales in Cook County, Illinois, in 2016 constituted 0.19% *** of its overall national annual sales" and that GML's annual sales in Cook County "did not exceed 0.47% of its overall national sales" during any of the five years preceding the accident.

¶ 7   Cummings also filed a motion to dismiss Tabirta's lawsuit or, alternatively, to transfer to the suit to another venue. He expressly adopted, realleged, and incorporated the substance of GML's motion in his own filing.

¶ 8   After defendants filed their motions challenging Tabirta's chosen venue, the parties engaged in limited discovery with respect to that issue. During the course of that discovery, GML submitted answers to plaintiff's interrogatory requests, and several of its employees were deposed.

¶ 9   In its answers, GML admitted that it had conducted business in Cook County since 1968 but denied that it was "doing business" in the county within the meaning of the Illinois venue statute. Specifically, GML admitted that it purchased materials and supplies from vendors located in Cook County and that it sold some products to customers located in Cook County. In addition, GML acknowledged that delivery vehicles that it owned traveled on roads in Cook County. GML, however, denied advertising in Cook County. GML's total national and international sales in 2016 amounted to $686,328,949. Sales in Cook County in 2016 amounted to $1,348,507 and comprised only 0.19% of its total annual revenue.

¶ 10   In a discovery deposition, James Bolton, a Cook County resident for the past 50 years, testified that he commenced part-time employment with GML in 2011. His understanding was that he was hired because GML needed a point person in Chicago. He services three customers, only one of which is located in Cook County. Bolton testified that he corresponds with the customers via phone and e-mail and uses his own cell phone and computer to do so. GML provided him with a corporate 1-800 number for clients to reach him. He "occasionally" meets with GML's customers in person and is reimbursed for any travel expenses. GML does not, however, reimburse him for his home office expenses. Bolton does not maintain any files or records at his home office.

¶ 11   Bolton also completed an affidavit. In his affidavit, he reiterated that he was hired to service three customers—Aldi, Central Grocery, and Sears/Kmart—and averred that 85% of his time is spent dealing with Aldi. Aldi's headquarters is located in Batavia, which straddles Kane and Du Page Counties. The headquarters of one of his other clients, Sears/K-Mart, is located in Cook County, and he visits that office approximately twice per year. Bolton estimated that he devotes "less than 5%" of his work involved dealing with Sears/K-Mart. He never meets with clients at his home.

¶ 12   Michael Heffernan, GML's transportation safety and risk manager, was also deposed. He acknowledged that Bolton was a W-2 employee of GML and classified Bolton as a sales representative. Although GML conducted some business in Cook County, Heffernan testified that Cook County was "not a significant part or a focus of GML's business" and that "very little" of GML's overall sales occurred in Cook County. From 2011-16, GML's sales in Cook County totaled $17,297,873.32.

¶ 13   Thomas Welge, general counsel for GML, was also deposed. He classified Bolton as an "administrative type point person." Welge denied that Bolton was hired because GML specifically needed a point person in Chicago or Cook County. He explained that the

company simply wanted a contact person in Illinois to service Aldi, one of GML's biggest customers, which had an office in Batavia, Illinois. In his accompanying affidavit, Welge reiterated that when GML hired Bolton, the company was seeking to hire an employee who lived near the general vicinity of Aldi's Batavia office. He averred that residence in Cook County specifically was not a job requirement and that Bolton's employment was not contingent upon him residing in Cook County.

¶ 14    Upon the completion of the aforementioned discovery, Tabirta filed his response to defendants' motions challenging his choice of Cook County as a proper venue. Relying on Bolton's deposition testimony, Tabirta argued that, although GML's registered agent and office were located in Randolph County, Bolton's Cook County residence from which he serviced three GML clients constituted an "other office" within the meaning of the Illinois venue statute. Moreover, citing GML's long-standing history of conducting business in Cook County, Tabirta argued that GML was also "doing business" in the county. Given that GML maintained an "other office" and was "doing business" in Cook County, Tabirta argued that Cook County was a proper venue and that defendants' challenges toward his chosen venue lacked merit.

¶ 15    Following a hearing, the circuit court denied defendants' motions to dismiss Tabirta's suit for being initiated in an improper venue. In doing so, the court acknowledged that the accident did not occur in Cook County and found that GML was not truly "doing business" in Cook County given that only a "very, very small percentage of [its] sales" occur within the county. Nonetheless, the court concluded that venue was proper in Cook County because GML maintained an office in Cook County, by virtue of the fact that James Bolton, one of its employees, "service[ed] clients on behalf of his employer" out of his Cook County residence. The court concluded that "the simple fact that [Bolton's] working out of his home doesn't *** deny the fact that it's still a place where GML is doing business out of."

¶ 16    Following entry of the circuit court's order, defendants filed a petition for leave to appeal with this court pursuant to Illinois Supreme Court Rule 306(a)(4) (eff. Nov. 1, 2017) seeking review of the circuit court's judgment. This court, however, denied defendants' petition for leave to appeal. In response, defendants filed a petition for leave to appeal with the Illinois Supreme Court. The supreme court also denied defendants leave to appeal; however, in an exercise of its supervisory authority, the court directed this court to vacate our prior order and to allow the petition. *Tabirta v. Cummings*, No. 123344 (Ill. Feb. 5, 2018). In light of the supreme court's exercise of its supervisory authority in this matter, we now allow defendants' petition for leave to appeal and consider their appeal on the merits.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendants contend that the circuit court erred in denying their motion to transfer venue because "no part of the 'transaction' occurred in Cook County and no defendant is a resident of Cook County."

¶ 19    Tabirta responds that the circuit court properly found that venue is proper in Cook County, Illinois, because GML "has a fixed office in Chicago, Cook County, managed and maintained by its salaried employee James Bolton and operated in furtherance of *** GML's corporate interests and in support of its Cook County, Illinois[,] customers."

¶ 20    Being subject to suit in a proper venue is an important statutory privilege. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005); *Lake County Riverboat L.P. v. Illinois*

*Gaming Board*, 313 Ill. App. 3d 943, 951 (2000). As such, a defendant has the right to insist that a lawsuit proceed in a proper venue provided that the objection is made in a timely manner. *Corral*, 217 Ill. 2d at 154. A defendant who objects to a plaintiff's chosen venue then bears the burden of proving that the venue is incorrect and must be able to identify specific facts that establish that the plaintiff's choice of venue is not proper. *Id.* at 155; *Reynolds v. GMAC Financial Services*, 344 Ill. App. 3d 843, 848 (2003). Any inconsistencies and doubts in the record with respect to the issue of venue will be resolved against the defendant. *Corral*, 217 Ill. 2d at 155; *Reynolds*, 344 Ill. App. 3d at 848. Because the issue of venue presents mixed questions of fact and law, the circuit court's underlying factual findings will not be disturbed unless they are against the manifest weight of the evidence; however, its ultimate determination as to whether the venue statute is satisfied is subject to *de novo* review. *Corral*, 217 Ill. 2d at 154-55.

¶ 21    "The purpose behind venue statutes is to protect defendants against a plaintiff's arbitrary selection of forum." *Lake County Riverboat*, 313 Ill. App. 3d at 951. To effectuate that purpose, venue statutes restrict proper venue to places that are convenient either to a defendant or to potential witnesses. *Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 288-89 (1990); *Lake County Riverboat*, 313 Ill. App. 3d at 951. Section 2-101 of the Code of Civil Procedure (Code) governs venue in Illinois and provides, in pertinent part, as follows:

> "Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2014).

¶ 22    This statute "reflects a legislative determination that a party should not be required to defend an action in a county that has little or no relation to the party or the transaction that is the subject of the [plaintiff's] suit." *Melliere v. Luhr Bros., Inc.*, 302 Ill. App. 3d 794, 796 (1999).

¶ 23    Here, the traffic accident took place in Ohio. It is thus undisputed that no part of the underlying transaction at issue occurred in Cook County. It is also undisputed that defendant Cummings is not a Cook County resident. Venue in Cook County is thus only proper in the instant case if GML is a resident of Cook County.

¶ 24    With respect to county of residence of corporate defendants, section 2-102 of the Code provides that "[a]ny private corporation *** organized under the laws of this State, and any foreign corporation authorized to transact business in this State is a resident of any county in which it has its registered office or *other office* or is *doing business*." (Emphases added.) 735 ILCS 5/2-102(a) (West 2014). This provision "reflect[s] the legislature's view that a [corporate defendant] should not be put to the burden of defending an action in a county where the party does not maintain an office or do business and where no part of the transaction complained of occurred." *Bucklew*, 138 Ill. 2d at 289.

¶ 25    GML is a Missouri corporation with its principal place of business and registered agent located in Randolph County, Illinois. Pursuant to section 2-102 of the Code, venue is thus only proper in Cook County if GML has an "other office" in Cook County or is "doing business" in Cook County.

¶ 26    The term "other office" is not defined by statute, and aside from the Fifth District's decision in *Melliere*, 302 Ill. App. 3d 794, there is a dearth of case law construing the phrase. In *Melliere*, the plaintiff filed suit in St. Clair County, Illinois, against his employer after he sustained injuries on a construction site located near Kentucky. His employer, an Illinois construction corporation with its corporate headquarters located in Monroe County, Illinois, filed a motion to transfer the case for lack of venue. The circuit court, however, denied the motion, finding that the corporation maintained an "other office" in St. Clair County by virtue of the fact that it leased a hangar at a local airport, which the company used to house its corporate aircraft. The court noted that the company employed two full-time pilots who regularly reported to work at the hangar to fly company employees to job sites, job bids, and to construction industry meetings and conventions. In addition, the hangar was equipped with a phone and desk for the pilots to use and a local telephone directory contained a listing for the company at the airplane hangar. *Id.* at 796.

¶ 27    The company appealed the circuit court's ruling, arguing that the phrase "other office" should be "defined as a place for the regular transaction of business or performance of a particular service" and that the airplane hangar did not fall within that definition because the company was not engaged in the business of commercial aviation and none of its employees responsible for the transaction of its regular construction business reported to work at the hangar. *Id.* at 797. According to the company, the term "other office" should be limited to a facility in which its clerical work was performed and from which it prepared its construction bids, fielded inquiries about its business, and dispatched its employees to perform construction-related tasks. *Id.* at 798.

¶ 28    The Appellate Court, Fifth District, however, rejected the company's "narrow" and "restrictive" interpretation of the word "office." In doing so, the court found persuasive a Georgia Supreme Court decision broadly construing the term "office" as used in the Georgia venue statute as simply a "place of business." *Id.* at 798-99 (citing *Scott v. Atlanta Dairies Cooperative*, 238 S.E.2d 340 (Ga. 1977)). Relying on this construction of the term, the Georgia Supreme Court concluded that a filling station, rented by the defendant dairy company that was used to maintain its delivery trucks and from which it dispatched its employees to pick up milk, constituted an office even though the building was not a traditional clerical office that was open to the public. *Id.* at 799 (citing *Atlanta Dairies*, 238 S.E.2d 340). Employing the rationale utilized by the Georgia Supreme Court, the Fifth District in *Melliere* concluded that

> "the phrase other office as used in [the Illinois] venue statute means a fixed place of business at which the affairs of the corporation are conducted in furtherance of a corporate activity. This other office may be, but need not be, a traditional office in which clerical activities are conducted. Rather, we believe that the phrase other office includes any fixed location purposely selected to carry on an activity in furtherance of the corporation's business activities. The facility may be open to the public or may be a strictly private corporate operation." (Emphases omitted.) *Id.* at 800.

Accordingly, given that the company's airplane hangar was regularly used to further its construction business activities, the Fifth District concluded that the hangar was an "other office" within the meaning of the Illinois venue statute.

¶ 29    Both parties rely on *Melliere* to support their respective venue arguments. Defendants argue that Bolton's "private residence is simply his home" and that GML has no ownership

or financial interest in his home and does not manage or control the property in any way. Because Bolton's home is not a "fixed location purposely selected by GML to carry on corporate activities in Cook County," defendants argue that it does not meet the *Melliere* court's definition of an office for purposes of venue. Tabirta, in turn, responds that Bolton was specifically hired to work out of his Cook County residence to service several of GML's Illinois customers. Because Bolton's residence is a fixed location chosen specifically by GML to tend to its Illinois customers and facilitate its corporate interests, Tabirta asserts that Bolton's home office meets the *Melliere* court's definition of the term office as used in the Illinois venue statute. We agree with Tabirta.

¶ 30    The record establishes that GML is in the business of manufacturing, selling, and delivering nonperishable private-label food items. Some of GML's sales are derived from customers located in Illinois. The record also establishes that Bolton was hired in 2011 for the express purpose of servicing three of GML's Illinois customers, the most important of which was Aldi, a food retailer with a corporate office located in Batavia, a city in northern Illinois that straddles Du Page and Kane Counties. The record further establishes that Bolton's residence, located in nearby Cook County, was a factor in his hiring. In his discovery deposition, GML's general counsel, Thomas Welge, explained that GML was looking to hire a "point person" in Illinois who lived in close proximity to Aldi's Batavia office. Bolton's Cook County residence satisfied this requirement. Since his hiring, Bolton has worked approximately 24 hours per week to service and maintain GML's relationships with those clients. He is not a traveling salesperson; rather, he spends the vast majority of his time communicating with GML's customers via e-mail and over the phone from his home, a fixed location. Although GML does not possess an ownership interest in Bolton's personal residence, we do not find that the lack of such an interest precludes a finding that Bolton's residence is an "other office." Admittedly, the corporate defendant in *Melliere* leased the facility found to be an "other office" for purpose of venue; however, the crux of the *Melliere* court's analysis as to whether the facility constituted an "office" for purposes of venue was not whether the corporate defendant possessed an ownership interest in the property. Instead, the relevant inquiry was whether the property was a "fixed location purposely selected to carry on an activity in furtherance of the corporation's business activities." *Id.* Employing this rationale, we find that Bolton's home residence satisfies the *Melliere* court's definition of the term "other office" and that GML is thus a resident of Cook County. GML specifically hired Bolton to service three of its Illinois customers from his Cook County residence and provided him with an e-mail address and a corporate extension with which to do so. Since his hiring, Bolton has acted as GML's "point person" in Illinois and has worked to maintain GML's business relationships with its Illinois clients, thereby furthering GML's corporate interests. We therefore conclude that the circuit court did not err in denying defendants' motions seeking dismissal of Tabirta's lawsuit for lack of proper venue.

¶ 31    In so finding, we are unpersuaded by defendants' reliance on *Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508 (1987), a case in which the Fifth District rejected the argument that the location of an employee's home office in the plaintiff's chosen venue was sufficient to establish that the defendant company was "doing business" in that venue. *Id.* at 510. Neither the parties nor the court engaged in any analysis as to whether the employee's home office constituted an "other office" within the meaning of the Illinois venue statute. *Id.* Instead, the court was only asked to determine whether a company could be found to be doing business in

a county simply because one of its employees had a home office located in that county. *Id.* Accordingly, we disagree that *Peterson* necessarily compels a different result.

¶ 32 We further disagree that our decision would improperly subject a company to venue in "any county where any of its agents or employees conduct[ ] any work out of their homes" and would thus "defy the purpose of the [Illinois venue] statute," which is designed to protect defendants against being subjected to a plaintiff's arbitrary choice of venue. We emphasize that cases involving questions of venue are fact specific and that our conclusion is based solely upon the facts present in this case. A fair reading of this disposition does not support the conclusion that venue is proper in any county in which a corporation's employee maintains a home office; rather, we are simply holding that, in this case, Bolton's home office in which he regularly services three of GML's customers constitutes an "other office" within the meaning of the venue statute. We therefore affirm the judgment of the circuit court.[2]

¶ 33                                  III. CONCLUSION
¶ 34 The judgment of the circuit court is affirmed.

¶ 35 Affirmed.

---

[2]In light of our conclusion that GML maintains an office in Cook County, we need not address Tabirta's alternative argument that venue in Cook County is also proper because GML is doing business in Cook County.