**2020 IL 124798**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124798)

SERGIU TABIRTA, Appellee, v. JAMES J. CUMMINGS *et al.*, Appellants.

*Opinion filed October 22, 2020.*


CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Garman, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion.

Justice Karmeier took no part in the decision.


**OPINION**

¶ 1    The plaintiff in this case filed a negligence action in the circuit court of Cook County. Defendants moved to transfer venue on the ground that neither defendant was a Cook County resident. The circuit court denied the venue motions, and the

appellate court affirmed. 2019 IL App (1st) 172891-B. Based on the record before us, we now hold Cook County is not a proper venue for plaintiff's action. Accordingly, we reverse the lower courts' judgments and remand to the circuit court with directions to transfer the cause to an appropriate venue.

¶ 2                                BACKGROUND

¶ 3        On December 13, 2016, plaintiff Sergiu Tabirta was driving a tractor trailer in Delaware County, Ohio, when another tractor trailer, driven by defendant James Cummings, collided with his vehicle. Plaintiff suffered multiple severe injuries in the accident, including the amputation of both legs. Cummings's tractor trailer was owned by his employer, defendant Gilster-Mary Lee Corporation (GML), a food product manufacturer. On December 27, 2016, plaintiff filed a negligence action against both defendants in the circuit court of Cook County. Plaintiff alleged Cummings was negligent in the operation of his vehicle and that GML was liable for Cummings's negligence pursuant to an agency theory of liability.

¶ 4        On February 14, 2017, GML filed a motion to transfer venue pursuant to the Illinois venue statute. See 735 ILCS 5/2-101 (West 2016) (providing that venue is proper either (1) in the county of residence of any defendant or (2) in the county where the transaction occurred). GML alleged that Cook County was an improper venue since the accident did not occur in Cook County and neither defendant was a resident of Cook County as defined by statute. Cummings filed a separate motion seeking the same relief and adopting and incorporating by reference the arguments raised by GML. In response, plaintiff argued that venue was proper because the Cook County home office of GML employee James Bolton constituted an "other office" of the company under the venue statute. *Id.* § 2-102(a) (a private corporation is a resident of any county in which it has its registered office or "other office" or is "doing business"). Alternatively, plaintiff argued that Cook County was an appropriate venue because GML was "doing business" in the county. *Id.*

¶ 5        The parties conducted limited discovery on the venue issue. The record from the discovery proceedings reveals that Cummings is not a resident of Cook County. GML is a Missouri corporation with its principal place of business and registered agent located in the city of Chester, Illinois, in Randolph County. GML owns multiple food manufacturing plants in the Midwest region of the United States,

including several in Illinois. None is in Cook County. The company also owns a fleet of trucks for delivery of its products.

¶ 6        Bolton gave a deposition and provided an affidavit. He stated that he has lived in Cook County continuously since 1956. In 2010, he retired from a career in the food industry. In 2011, he began working for GML on a part-time basis as a customer service and account representative. He worked approximately 20 hours per week and was paid by the hour. He worked with three clients—Aldi, Inc., located in Batavia, in Du Page and Kane Counties; Central Grocery, located in Joliet, in Kendall and Will Counties; and Sears/K-Mart, located in Hoffman Estates in Cook County. Bolton stated that approximately 85% of his work time was devoted to Aldi, while less than 5% of his time was devoted to Sears/K-Mart, his sole Cook County customer.

¶ 7        Bolton averred in his affidavit that he was hired by GML "because of my over 50 years of experience in the food industry and because GML wanted a contact person in northern Illinois for one of its customers, Aldi, Inc." In his deposition, he testified that "[GML] needed somebody in the Chicago area to take care of several accounts, and they wanted somebody on a part-time basis to oversee these accounts." He described his job as a "point person" for customers to contact if they had questions about sales or orders.

¶ 8        Bolton stated that he worked mainly out of his home in Cook County. He had never had a customer visit his home for any reason. Bolton said he made two hour-long visits per year to Sears/K-Mart's corporate headquarters in Hoffman Estates. GML reimbursed him for his travel expenses. GML did not pay any portion of his mortgage, real estate taxes, utilities, cell phone bills, Internet charges, office supplies, or any other expenses associated with his home office. GML had no ownership interest in Bolton's personal residence. Bolton said he had a telephone extension for GML's general 800 number in Chester, Illinois. He explained that, when a customer dialed the 800 number and entered his four-digit extension, the call would be forwarded to his cell phone. Bolton testified that he communicated with customers by phone or e-mail using a company-provided e-mail address. He kept no company records in his home other than the e-mails stored on his computer. Bolton testified that GML provided him with a computer after he was hired.

¶ 9       Thomas Welge, GML's vice president of sales and research and development, stated in his affidavit that the company does not advertise to the public that it has an office in Cook County. Welge said GML hired Bolton in 2011 because the company "desired an individual with experience in the food industry to service one customer in particular located in northern Illinois, Aldi, Inc." Welge stated that Bolton's county of residence was of no significance in GML's hiring decision. Furthermore, according to Welge, Bolton's continued employment was not contingent on him residing in a certain county, and his employment would not be affected if he moved to a neighboring county. During his deposition, Welge was asked whether he agreed with the statement that Bolton "was hired because GML needed a Chicago contact and [a] Chicago point person." Welge said he disputed that statement. He testified that the reason GML hired Bolton was to "have a contact person for Aldi."

¶ 10      Michael Heffernan, GML's transportation safety and risk manager, attested that the company does not own, lease, or occupy any property in Cook County. He further stated that GML does not design, manufacture, advertise, finance, or sell its products from within Cook County. According to Heffernan, the company's sales in Cook County in 2016 constituted 0.19% of its total sales and, during the five-year period preceding plaintiff's accident, its sales in Cook County did not exceed 0.47% of its total sales in any year.

¶ 11      After hearing arguments, the circuit court denied defendants' motions to transfer venue, holding that Cook County provided a proper venue for plaintiff's action. The court determined that Bolton's home office constituted an "other office" of GML because he serviced clients on behalf of his employer from his Cook County residence. The court rejected plaintiff's alternative argument that GML was "doing business" in Cook County, citing the proportionally low quantity of sales to Cook County customers.

¶ 12      Defendants filed a petition for leave to appeal in the appellate court pursuant to Illinois Supreme Court Rule 306(a)(4) (eff. Nov. 1, 2017). The appellate court denied the petition. Thereafter, defendants filed a petition for leave to appeal in this court. We denied leave to appeal but exercised our supervisory authority to direct the appellate court to vacate its order and allow the petition for leave to appeal. *Tabirta v. Cummings*, No. 123344 (Ill. May 30, 2018).

¶ 13    Upon remand, the appellate court affirmed the circuit court's judgment. 2019 IL App (1st) 172891-B. The court found that "GML specifically hired Bolton to service three of its Illinois customers from his Cook County residence." *Id.* ¶ 30. The court also noted that Bolton spent most of his working hours communicating with customers from his home office using a company-provided telephone extension and e-mail address. *Id.* Based on these factors, the court concluded that Bolton's residence was an office of GML and, thus, venue was proper in Cook County. *Id.* In light of its holding, the appellate court found it unnecessary to address plaintiff's "doing business" argument. *Id.* ¶ 32 n.2.

¶ 14    Defendants filed a petition for leave to appeal, which this court allowed. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). We allowed the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of defendants' position and the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff's position. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 15                                    ANALYSIS

¶ 16    Proper venue is a valuable privilege belonging to the defendant. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005). As such, it is accorded great weight by Illinois courts. *Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250, 260 (1984). The purpose of the Illinois venue statute is to ensure "that the action will be brought either in a location convenient to the defendant, by providing for venue in the county of residence, or convenient to potential witnesses, by allowing for venue where the cause of action arose." *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 328 (1977) (citing Edson R. Sunderland, *Observations on the Illinois Civil Practice Act*, 28 Ill. L. Rev. 861 (1934)). The statute "reflect[s] the legislature's view that a party should not be put to the burden of defending an action in a county where the party does not maintain an office or do business and where no part of the transaction complained of occurred." *Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 289 (1990) (citing *Stambaugh*, 102 Ill. 2d at 260-62, and *Mosele*, 67 Ill. 2d at 328).

¶ 17    A defendant who objects to a plaintiff's chosen venue bears the burden of proving that the venue is incorrect. *Corral*, 217 Ill. 2d at 155. The defendant must be able to identify specific facts clearly establishing that the plaintiff's choice of

venue is improper. *Id.* In considering a defendant's motion based on improper venue, the trial court should construe the statute liberally in favor of effecting a change of venue. *Stambaugh*, 102 Ill. 2d at 261. On appeal, the reviewing court will not disturb the trial court's factual findings unless they are against the manifest weight of the evidence. *Corral*, 217 Ill. 2d at 154. The trial court's legal conclusions are subject to *de novo* review. *Id.* at 155.

¶ 18    Venue is distinct from the equitable doctrine of *forum non conveniens*. *Foster v. Chicago & North Western Transportation Co.*, 102 Ill. 2d 378, 384 (1984). A motion filed pursuant to *forum non conveniens* seeks to move the action from one forum with proper venue to another, more convenient forum with proper venue. *Id.* at 384-85. In considering a *forum non conveniens* motion, the trial court looks beyond the statutory criteria for venue to determine the relative convenience of each forum. *Id.* The court makes this determination by balancing relevant public interest and private interest factors. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443-44 (2006).

¶ 19    By contrast, venue in Illinois is purely statutory. Section 2-101 of the Illinois Code of Civil Procedure provides that every action must be commenced either:

"(1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2016).

Subsection 2-102(a) defines residency for corporate defendants. It provides that a private corporation "is a resident of any county in which it has its registered office or other office or is doing business." *Id.* § 2-102(a).

¶ 20    There is no dispute in this case that the accident took place in Ohio and, thus, no part of the underlying transaction occurred in Cook County. Cummings is not a resident of Cook County. GML's registered office is in Randolph County, Illinois. Accordingly, under the statute venue is proper in Cook County only if GML is a resident of Cook County either by way of an "other office" or "doing business."

¶ 21                                   I. "Other Office"

¶ 22        In *Melliere v. Luhr Bros., Inc.*, 302 Ill. App. 3d 794 (1999), the appellate court specifically addressed the "other office" prong of the venue statute. The plaintiff in that case, Timothy Melliere, filed suit under the Jones Act (46 U.S.C. § 688 *et seq.* (Supp. II 1994)) against his employer, Luhr Bros., Inc. (Luhr Bros.), alleging he suffered injuries while working as a deckhand on the Ohio River near Paducah, Kentucky. *Melliere*, 302 Ill. App. 3d at 795. Plaintiff filed his action in Illinois in the circuit court of St. Clair County. Luhr Bros. filed a motion to transfer venue to Monroe County, Illinois, where its headquarters was located. The circuit court denied the motion, and Luhr Bros. appealed. *Id.*

¶ 23        The record revealed that Luhr Bros. leased an airport hangar at the St. Louis Downtown Parks Airport in Cahokia, St. Clair County, Illinois. *Id.* at 796. A large sign directory at the airport indicated that Luhr Bros. occupied hangar 6. Luhr Bros. owned an airplane that it had housed in the hangar since 1985. The airplane was used to transport employees to job sites, locations for bidding jobs, and industry meetings and conventions. *Id.* Luhr Bros. employed two full-time pilots who regularly reported to work at the hangar and logged approximately 400 flight hours per year. The hangar was equipped with a telephone and a desk for the pilots' use. The public telephone directory also contained a business listing for Luhr Bros. at the airport hangar. *Id.*

¶ 24        Luhr Bros. argued the airplane hangar was not an "office" because none of its employees responsible for the regular transaction of its construction business reported to work at the hangar. *Id.* at 797. It explained that it was not engaged in the business of commercial aviation, nor was it performing the service of transporting employees for profit. Luhr Bros. thus argued that the hangar did not constitute an "other office" for venue purposes because it was not a place for the regular transaction of its business. *Id.*

¶ 25        The appellate court rejected Luhr Bros.' proposed construction of the term "office" as "too narrow and restrictive." *Id.* at 798. Noting the absence of any relevant Illinois caselaw and the similarities between Illinois's and Georgia's venue statutes, the appellate court adopted the rationale set forth in *Scott v. Atlanta Dairies Cooperative*, 238 S.E.2d 340 (Ga. 1977). *Melliere*, 302 Ill. App. 3d at 798-800. In *Scott*, the Georgia Supreme Court stated:

"Webster's Third New International Dictionary defines 'office' as 'a place where a particular kind of business is transacted or a service is supplied.' An office (place of business) may be operated to perform services for or transact a particular kind of business for the corporation without being open to the public. Atlanta Dairies rents and equips a building in Putnam County and lists it in the telephone directory. At this place Atlanta Dairies maintains its trucks and from this place it dispatches its employees to pick up milk. Atlanta Dairies has an office and transacts business in Putnam County so as to enable it to be sued upon contracts made in that county or to be performed there." *Scott*, 238 S.E.2d at 342.

¶ 26    The *Melliere* court found this rationale persuasive and incorporated it into its holding as follows:

"the phrase 'other office' as used in our venue statute means a fixed place of business at which the affairs of the corporation are conducted in furtherance of a corporate activity. This *other office* may be, but need not be, a traditional office in which clerical activities are conducted. Rather, we believe that the phrase *other office* includes any fixed location purposely selected to carry on an activity in furtherance of the corporation's business activities. The facility may be open to the public or may be a strictly private corporate operation.

It is inescapable that Luhr Bros. maintains an office in St. Clair County, Illinois, given the facts and our construction of the phrase *other office*." (Emphases in original.) *Melliere*, 302 Ill. App. 3d at 800.

¶ 27    In contrast to *Melliere*, there is no dispute in this case that Bolton's home office was an "office" in the plain, commonly understood sense of the word. Bolton spent approximately 20 hours per week working out of his home office as a customer service and account representative for GML. He communicated with customers by phone and e-mail, acting as a "point person" for customers. Although he did not sell any products, he clearly engaged in activities in furtherance of GML's corporate business interests. This does not end our inquiry, however. To establish venue in a county, the plain statutory language requires that a private corporation "*has* *** [an] other office" in that county. (Emphasis added.) 735 ILCS 5/2-102(a) (West 2016). Consequently, we must determine whether GML "had" an office in Cook County, that is, whether Bolton's home office was an office *of GML*.

¶ 28    According to the uncontested facts in the record, GML hired Bolton to provide service to three of its customers in Northern Illinois, particularly Aldi, Inc., located in Batavia. While GML was aware that Bolton would be working out of his home, there is no evidence that it hired Bolton because he lived in Cook County. Welge testified that Bolton's county of residence was not a factor in his hiring. Welge also stated that Bolton's continued employment would not be affected if Bolton decided to move to another county. Furthermore, there is no evidence that GML intended to open an office in Cook County or would have done so had it not hired Bolton.

¶ 29    It is clear from the record that GML did not "purposely select[ ]" a fixed location in Cook County to carry on its business activities. See *Melliere*, 302 Ill. App. 3d at 800. Rather, the evidence shows that GML purposely selected Bolton, a person with extensive experience in the food industry, to provide service to certain customers. Even if Bolton's proximity to customers played a role in his hiring, this does not mean GML selected Bolton's residence as a location to establish and maintain an office. GML hired a person; it did not select a new location for conducting its business activities.

¶ 30    Other facts in the record weigh against characterizing Bolton's home office as an office of GML. GML did not own, lease, or pay any expenses associated with Bolton's residence. It paid no portion of Bolton's mortgage, real estate taxes, or utilities, including telephone and Internet charges. GML furnished Bolton with a computer but did not provide a cell phone or any office supplies. Moreover, GML did not hold out to customers or the public that Bolton's residence was an office of GML. Bolton's home address was not listed as a GML location on its website or in any public or internal directories. There was no GML signage on the home. Bolton testified that no customers ever came to his home.

¶ 31    Although plaintiff emphasizes that Bolton had his own extension for GML's corporate 800 number, we find this fact irrelevant to our venue analysis. Bolton testified that, when a customer dialed his extension from the 800 number, the call was forwarded to his cell phone. Accordingly, Bolton could have answered his customers' calls from his car, a coffee shop, or another location outside his home. The telephone extension had no physical connection to his residence.

¶ 32    The fact that Bolton conducted work for GML from his home office, standing alone, is insufficient to corroborate plaintiff's claim that the home was an "other

office" of GML. There is no evidence that GML purposely selected Bolton's residence as its office. Based on the totality of the facts in this case, we therefore conclude that Bolton's Cook County residence was not an office of GML for venue purposes.

¶ 33                                II. "Doing Business"

¶ 34        To establish corporate residency under the "doing business" prong of the statute (735 ILCS 5/2-102(a) (West 2016)), the defendant "must *** be conducting its usual and customary business within the county in which venue is sought." *Mosele*, 67 Ill. 2d at 329. This requires a defendant to have more extensive contacts with a county than the "minimal contacts" required to subject a defendant to the jurisdiction of the Illinois courts. *Id.* Evidence that a defendant solicits business or sells goods and services within the county does not automatically establish that defendant is "doing business" in the county. *Bucklew*, 138 Ill. 2d at 292. A relevant factor in the court's determination is the quantity or volume of business conducted by the defendant in the county. *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 286 (1987). A defendant will be characterized as doing business only where its activities are " 'of such a nature so as to localize the business and make it an operation within the district.' " *Mosele*, 67 Ill. 2d at 329-30 (quoting *Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F. Supp. 613, 617 (E.D. Pa. 1956)).

¶ 35        In this case, defendants contend that GML was not doing business in Cook County within the meaning of the statute at the time plaintiff filed his action in 2016. See *Long v. Gray*, 306 Ill. App. 3d 445, 449 (1999) ("residence" for venue purposes means residence at the time of the institution of the suit (citing *Wilson v. Central Illinois Public Service Co.*, 165 Ill. App. 3d 533, 537 (1988))). We agree. GML had no office or other facility in Cook County. Nor did GML design, manufacture, advertise, finance, or sell its products from within Cook County. Bolton did not sell any products from his home office. The work he conducted from his Cook County residence was merely incidental to GML's usual and customary business of food product manufacturing. See, *e.g.*, *Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508, 510-11 (1987) (rejecting plaintiffs' argument that defendant was doing business in a county where one of its employees did promotional work from his home office).

¶ 36    In addition, GML's sales to customers in Cook County constituted just 0.19% of its total sales, *i.e.*, less than one-fifth of 1% of its total sales, for the year 2016. In cases involving similar sales numbers, this court has rejected claims that a defendant was doing business in the county. For instance, in *Stambaugh*, 102 Ill. 2d 250, we held that venue did not lie in St. Clair County. The defendant's sales in St. Clair County constituted approximately five-hundredths of 1% of its annual sales volume in 1976, which this court characterized as an "insignificant fraction of its total sales." *Id.* at 259. In another case, we held the defendant was not doing business in St. Clair County where its sales in the county constituted 2.5% of its Illinois sales and only 0.12% of its national sales for 1986. *Bucklew*, 138 Ill. 2d at 291-94. Based on our analyses in those cases, we find that the volume of GML's sales in Cook County is insufficient to support a finding that it was doing business in the county.

¶ 37    Considering all the relevant factors, we conclude that GML was not "doing business" in Cook County in 2016 for purposes of establishing residency under the venue statute.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we hold the circuit court erred in denying defendants' motions to transfer venue from Cook County. We reverse the judgments of the lower courts and remand to the circuit court with directions to transfer the case from Cook County to an appropriate venue.

¶ 40    Judgments reversed.

¶ 41    Cause remanded with directions.

¶ 42    JUSTICE KILBRIDE, specially concurring:

¶ 43    Based on the facts of this case, I agree with the majority that Bolton's Cook County residence did not constitute one of GML's offices for purposes of the "other office" prong of our state venue statute (735 ILCS 5/2-101 (West 2016)). *Supra* ¶ 32. I write separately solely to point out a necessary corollary to that statement:

our holding should not be read to imply, or even to suggest, that we would reach the same conclusion in all cases involving an employee's use of a home office. Even after the filing of this opinion, it remains an open question whether, for example, evidence that a defendant operated a small business out of her residence would be sufficient to meet the statutory venue requirements, with the answer depending on the facts in the particular case.

¶ 44 As the majority correctly points out, " 'the phrase *other office* includes any fixed location purposely selected to carry on an activity in furtherance of the corporation's business activities.' " (Emphasis in original.) *Supra* ¶ 26 (quoting *Melliere v. Luhr Bros., Inc.*, 302 Ill. App. 3d 794, 800 (1999)). Accordingly, our courts' examination of whether an employee's home office meets that definition must rely on the specific facts adduced in each case. A one-size solution does not fit all for purposes of our venue statute. Since the facts in each case can vary widely, a court's ultimate conclusion about whether a given home office qualifies as an "other office" hinges on its review of those specific facts.

¶ 45 After carefully reviewing the facts established in the instant case, I agree with the majority that the plaintiff did not present sufficient evidence to show the part-time employee's home office was an "other office" for GML. For that reason, the majority properly reversed the judgments denying the defendants' motions to transfer venue from Cook County. The sole goal of this writing is to expressly recognize the necessarily narrow holding represented by our decision. I am otherwise in full agreement with the court's opinion.

¶ 46 JUSTICE KARMEIER took no part in the consideration or decision of this case.