2023 IL App (1st) 221289-U

No. 1-22-1289

Second Division
March 31, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TRYNELL WILLIAMS, and AISHA BARNES, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| | ) | No. 2020 L 7858 |
| GERALD HORN, M.D., and LASIKPLUS MEDICAL ASSOCIATES, S.C., | ) ) | Honorable |
| | ) | Kathy M. Flanagan |
| Defendants-Appellants. | ) | Judge, presiding |

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's denial of defendants' motion for transfer of venue to Du Page County is reversed where neither defendants' residency nor the transaction underlying plaintiff's underlying medical malpractice are in Cook County.

No. 1-22-1289

¶ 2    This case is before us on interlocutory appeal from the denial of a motion to transfer venue in a medical malpractice action from Cook County to Du Page County.[1] In 2019, defendant, Dr. Gerald Horn performed LASIK surgery on plaintiff, Trynell Williams, a Cook County resident. The surgery, as well as initial post-operative care in response to Williams' visions related complaints, occurred at Dr. Horn's medical office in Du Page County. When Williams' post-operative symptoms did not abate, Dr. Horn referred him to Chicago Cornea Consultants for further evaluation.

¶ 3    Williams filed a medical malpractice action in Cook County against Dr. Horn, LasikPlus Medical Associates, Inc. ("LPMA"), and LCA-Vision Inc. ("LCA") (collectively, defendants). In response, defendants filed a combined motion to dismiss LCA as a defendant and for transfer of venue to Du Page County pursuant to sections 2-101 and 2-619 of the Code of Civil Procedure. 735 ILCS5/2-101 (West 2020), 735 ILCS 5/2-619 (West 2020). The circuit court granted defendants' motion to dismiss LCA, but having determined that venue was proper in Cook County, denied defendants' transfer of venue motion.[2] On appeal, the two remaining defendants, Dr. Horn and LPMA, challenge the circuit court's venue determination and seek to transfer the case to Du Page County. For the reasons that follow, we reverse the circuit court's order.

¶ 4                                    I. BACKGROUND

¶ 5    We derive the facts of this case, which are virtually undisputed, from the allegations of the pleadings, supporting affidavits and exhibits contained in the record. The record reflects that the

---

[1]Supreme Court Rule 306(a)(4) provides for interlocutory appeals by permission of court from the denial of a motion to transfer venue. Ill. S. Ct. R. 306(a)(4) (eff. Oct. 1, 2020); see also *Chochorowski v. Home Depot U.S.A., Inc.*, 376 Ill. App. 3d 167, 171 (2003).

[2]LCA, a corporation who maintains at least one office in Cook County, offers management and administrative services to various LasikPlus vision centers. Pursuant to a management services agreement between LCA and LPMA, LCA contracted with LPMA to provide such services.

parties engaged in venue-related discovery during this litigation, which was subject to a protective order.

¶ 6    Dr. Horn is an ophthalmologist and surgeon in Illinois. LPMA is an Illinois corporation offering medical and surgical services. LPMA employs Dr. Horn, and he is the sole owner, president, and shareholder of the company. LPMA's registered agent is located in Springfield, Illinois, with only one physical office in Oak Brook, Illinois, which is located in Du Page County.

¶ 7    Williams and plaintiff, Aisha Barnes, his wife, are residents of Cook County. On or about October 5, 2019, Williams sought Dr. Horn's services, specifically for LASIK surgery on both of his eyes. Williams completed a "LasikPlus Registration – Medical History" form on October 5, 2019, indicating that he had learned about LasikPlus through a Facebook posting. On the same form, Williams indicated that he had previously had a tear in his right eye but had not been diagnosed with any other formal eye-related conditions. Williams also signed a "LasikPlus Patient's Rights and Responsibilities" form that same day.

¶ 8    On October 5, 2019, Dr. Horn performed surgery on both of Williams' eyes in his Oak Brook office in Du Page County.[3] In a follow-up appointment in November 2019, also in the Oak Brook office, Williams expressed to Dr. Horn that he had decreased visual acuity and felt pressure and discomfort in his left eye. Dr. Horn diagnosed Williams with diffuse lamellar keratitis, or inflammation of the cornea, for which he prescribed Williams two steroids.

¶ 9    On November 19, 2019, during a follow-up visit with Dr. Horn in the same office, Williams indicated that he continued to experience decreased visual acuity. Dr. Horn subsequently increased

---

[3]The complaint does not expressly allege that the surgery took place in Du Page County, but the parties do not dispute that it did. Further, although the record contains a "surgery checklist" which was signed by Dr. Horn on October 25, 2019, the parties also do not dispute that the surgery took place on October 5, 2019.

Williams' steroid prescription. Williams' symptoms persisted, and, on December 2, 2019, Dr. Horn referred him to Chicago Cornea Consultants. There, Williams was evaluated and subsequently diagnosed with pressure-induced stromal keratitis. Williams ceased his steroid use, but allegedly suffered permanent vision loss. Williams was additionally referred to Chicago Eye Specialists, where he was diagnosed with primary open-angle glaucoma and vision loss.[4]

¶ 10                                   B. Procedural history

¶ 11                          1. Complaint and Motion to Transfer Venue

¶ 12    On July 24, 2020, Williams and Barnes filed a complaint in the circuit court of Cook County against Dr. Horn and LPMA. In response, Dr. Horn and LPMA filed a motion for transfer of venue or in the alternative, a motion for *forum non conveniens*.[5] In lieu of a response, on November 9, 2020, plaintiffs filed an amended six-count complaint, adding LCA as an additional defendant and again naming Dr. Horn and LPMA. Count I alleged professional negligence against Dr. Horn. Count II alleged a count for *respondeat superior* against LPMA, as Dr. Horn's agent. Counts III and IV alleged a claim for loss of consortium against Dr. Horn and LPMA by Barnes. Counts V and VI were directed against LCA, on the basis of *respondeat superior* and loss of consortium. The amended complaint alleged that Dr. Horn: (1) failed to consider the necessity of post-operative intraocular pressures following Williams' surgery; (2) failed to appreciate the

---

[4]Neither Chicago Cornea Consultants nor Chicago Eye Specialists are parties to this litigation.

[5]On September 27, 2020, the circuit court, via email, advised the parties that defendants had to choose to move forward on either their venue argument or the one relating to *forum non conveniens*. Defendants elected to proceed solely on their challenge to venue. We note in passing that defendants may argue alternative theories, and further, a *forum non conveniens* motion presupposes that even if venue is proper in more than one county, one county may be more appropriate than the other. See *Lake County Riverboat L.P. ex rel. FRGP, L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 952 (2000) (the circuit court may rule on a motion for *forum non conveniens* after it has made a determination that there is more than one proper venue). Indeed, some of the very cases the circuit court cited in its order denying the motion to transfer resolve both types of motions. See, *e.g.*, *Bradbury v. St. Mary's Hospital of Kankakee*, 273 Ill. App. 3d 555, 558-559 (1995).

etiology of Williams' post-operative decreased visual acuity; (3) negligently diagnosed him with diffuse lamellar keratitis; (4) failed to consider Williams as a potential "steroid responder" when his visual acuity worsened, despite steroid treatment; (5) failed to stop his prescribed steroid treatment; (6) failed to timely diagnose Williams with pressure-induced stromal keratitis; and (7) failed to timely treat his condition. Pursuant to section 2-622 of the Code of Civil Procedure, an affidavit and a health professional's report were attached to the complaint. 735 ILCS 5/2-622 (West 2020). The health professional's report stated that, to a reasonable degree of medical certainty, there was a "meritorious cause of action" against Dr. Horn and LPMA.

¶ 13    On December 12, 2020, defendants filed a joint motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure ("Code"), and a motion for transfer of venue pursuant to sections 2-101 and 2-104(b) of the Code. 735 ILCS 5/2-101, 2-104(b), and 2-619 (West 2020). As to the section 2-619(a)(9) portion of their motion, defendants argued that LCA was not a proper party, and that plaintiffs' motivation in adding it as a defendant was to keep venue in Cook County. Defendants asserted that LCA was not a medical provider, as it only provided office administration and management services to doctors, and thus had not provided any care or treatment to Williams. Defendants further contended that LCA did not employ Dr. Horn, that he was not their agent and had never held any position with the entity, and thus LCA could not be held vicariously liable for Dr. Horn's alleged negligence.

¶ 14    As to the motion to transfer venue, defendants argued that, absent LCA as a defendant, venue was proper in Du Page County, not Cook County. Defendants asserted that plaintiffs were unable to meet the requirements of either prong of the Illinois venue statute, which dictated that venue in a certain county is proper either based on the residency of the defendants or where the underlying cause of action transacted or took place.

¶ 15 Regarding residency, defendants emphasized that neither Dr. Horn nor LPMA had offices in Cook County, and that Dr. Horn resided in Deerfield, which is situated in Lake County. Further, defendants asserted that LPMA's registered agent was in Springfield and LPMA only conducted business in Du Page County; that it does not conduct its usual and customary business in Cook County.

¶ 16 Regarding the underlying event giving rise to Williams' injuries, defendants argued that all of Dr. Horn and LPMA's treatment of Williams took place in Du Page County. Defendants stated that the only treatment that Williams received in Cook County had been with Chicago Cornea Consultants, a third-party provider who was not a named defendant and further, it was not clear from the complaint's allegations that the provider was even located in Cook County. In support of these contentions, defendants attached the affidavit of Dr. Horn.

¶ 17 In sum, plaintiffs responded that venue was proper in Cook County. Plaintiffs contended that LCA, which had offices and conducted business in Cook County, had marketed Dr. Horn as a surgeon for LasikPlus generally, and that Williams had sought out services through the company, and not specifically with Dr. Horn. Further, plaintiffs maintained that LCA had been added as a defendant in good faith, but even if LCA was dismissed from the case, venue was still proper in Cook County because Dr. Horn and LPMA conducted business there.

¶ 18 Defendants replied, reiterating that LCA was not a proper party. In support of this argument, defendants attached a professional services agreement between LPMA and Dr. Horn, which showed that: Dr. Horn owned LPMA; LPMA employed Dr. Horn; Dr. Horn was the sole shareholder of the company; and that LCA was the business manager for LPMA, which served the "greater Chicago, Illinois market" but was specifically responsible for the Du Page County location. Defendants also attached the LPMA and LCA management services agreement, which,

according to defendants, demonstrated that LPMA was not an LCA affiliate and thus, Dr. Horn was not an agent or apparent agent of LCA.

¶ 19                                  2. Circuit Court Ruling

¶ 20    On August 12, 2022, the circuit court entered a written order on defendants' motion. In granting defendants' 2-619(a)(9) motion to dismiss LCA, the court stated that "there [was] no question that LCA was not a proper party in this lawsuit" based on LCA's sole function as a management and administrative services provider to LMPA, and otherwise had no involvement with the underlying case.[6]

¶ 21    However, the court denied the remaining defendants' motion to transfer venue. With regard to residency, the court stated that it was "uncontested" that Dr. Horn was a resident of Lake County, and that LPMA was a private corporation that could be sued in any county for which it had a registered office or did business. The court observed that LPMA did not have a registered office in Cook County, but as to whether LPMA "d[id] business" in the county, the court deemed it "unnecessary to make any factual determination" on that issue because, according to the court, the decisive part of the venue analysis was whether the "transaction or some part thereof occurred out of which the cause of action arose ***."

¶ 22    Thus, the court considered the motion with regard to the second prong of the venue statute related to the underlying transaction. The court characterized plaintiffs' action as a medical malpractice action, which required plaintiffs to establish "the existence of a physician-patient relationship, a duty to comply with the applicable standard of care with regard to the medical treatment to the plaintiff, a breach of that duty, and injuries sustained by the plaintiff that were the

---

[6]Plaintiffs did not appeal dismissal of LCA as a defendant and LCA is not a party to this appeal.

proximate result of the alleged negligent conduct of the physician, as well as damages." The court stated that the injuries sustained by Williams were not "located solely in Du Page County," and that "injuries he sustained occurred in Cook County, where he specifically sought additional medical treatment ***." The court reasoned that the additional medical treatment constituted "some part thereof" of the transaction out of which the cause of action arose, and that venue was proper in Cook County.

¶ 23    On August 25, 2022, defendants timely filed a petition for leave to appeal to the appellate court pursuant to Supreme Court Rule 306(a)(4). We granted leave on September 21, 2022.

¶ 24                                    II. ANALYSIS

¶ 25                              A. Standard of Review

¶ 26    "When ruling on a motion to transfer venue, the circuit court is faced both with a question of law and fact." *Braun v. Aspide Medical*, 2020 IL App (1st) 200131, ¶ 17. "The court must make certain factual determinations and then determine the legal effect of those findings." *Id.* Thus, a reviewing court employs a bifurcated standard of review. *Id.* The reviewing court will not disturb the trial court's factual findings unless they are against the manifest weight of the evidence. *Tabirta v. Cummings*, 2020 IL 124798, ¶ 17. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155 (2005). In contrast, we review the legal effect of the circuit court's factual conclusions *de novo. Id.*

¶ 27                          B. Whether Venue is Proper in Cook County

¶ 28    The single issue before this court is whether venue is properly situated in Cook County. Based on our review, we conclude that it is not.

¶ 29  Venue in Illinois is governed by statute. Section 2-101 of the Code of Civil Procedure provides, in relevant part:

"Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, *or* (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added). 735 ILCS 5/2-101 (West 2020).

¶ 30  The first prong of the venue statute is often referred to as the "residency prong," while the second is considered the "transactional prong." See *Rensing v. Merck & Co., Inc.*, 367 Ill. App. 3d 1046, 1049 (2006). Also relevant here, with regard to Illinois-based corporate defendants, residency is determined by examining in which county the corporation "has a registered office or other office or is doing business." 735 ILCS 5/2-102(a) (West 2020). "Doing business," as that phrase is used in the venue statute, requires that the defendant "be conducting its usual and customary business within the county in which venue is sought." *Gardner v International Harvester Co.*, 113 Ill. 2d 535, 539 (1986) (quoting *The Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 329 (1977)). That said, clear from the express language of the statute, venue is proper if either the residency prong or the transactional prong is satisfied.

¶ 31  "The purpose of the Illinois venue statute is to ensure 'that the action will be brought either in a location convenient to the defendant, by providing for venue in the county of residence, or convenient to potential witnesses, by allowing for venue where the cause of action arose.' " *Tabirta,* 2020 IL 124798, ¶ 16 (quoting *The Baltimore & Ohio R.R. Co.*, 67 Ill. 2d 321, 328 (1977)). "The statute 'reflect[s] the legislature's view that a party should not be put to the burden of

defending an action in a county where the party does not maintain an office or do business and where no part of the transaction complained of occurred.' " *Id.* (quoting *Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 289 (1990)). Thus, "[p]roper venue is a valuable privilege belonging to the defendant." *Tabirta*, 2020 IL 124798, ¶ 16.

¶ 32    "Venue may be proper in more than one county." *Lake County Riverboat, L.P*, 313 Ill. App. 3d at 952. However, if a complaint is filed in the wrong county, a defendant may file a motion to transfer on the basis of improper venue "on or before the date upon which he or she is required to appear or within any further time that may be granted *** to answer or move with respect to the complaint." 735 ILCS 5/2-104(b) (West 2020); see also *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 41 (1990). "Motions to transfer to a proper venue may be supported and opposed by affidavit," and the court may consider "any competent evidence." 735 ILCS 5/2-104(c) (West 2020). It is the defendant's burden to prove that venue is incorrect by identifying "specific facts clearly establishing that the plaintiff's choice of venue is improper." *Tabirta*, 2020 IL 124798, ¶ 17. "In considering a defendant's motion based on improper venue, the trial court should construe the statute liberally in favor of effecting a change of venue." *Id.* However, "[a]ny doubts arising from the inadequacy of the record will be resolved against the defendant." *Corral*, 217 Ill. 2d at 155. We begin our review with that prong of the venue statute upon which the circuit court found venue to be proper in Cook County, the transactional prong.

¶ 33                                    1. The Transactional Prong

¶ 34    The circuit court based its ultimate ruling on the transactional prong of the statute, finding that part of the transaction from which Williams' injury arose occurred in Cook County because, according to the court, he had also suffered injuries there. We disagree.

¶ 35    The transactional prong of the Illinois venue statute assesses where "the county in which the transaction or some part thereof" took place. 735 ILCS 5/2-101; see *Terada v. Eli Lilly & Co*, 2015 IL App (5th) 140170, ¶ 23.[7] "Transaction" is defined as "something which took place whereby a cause of action arose and by which legal relationships were altered." *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226, 228 (1995). This "includes every fact that is an integral part of the cause of action." *Jackson v. Reid*, 363 Ill. App. 3d 271, 276 (2006). The phrase "some part thereof" signals that this portion of the venue statute is meant to be interpreted broadly and flexibly. *Tipton*, 273 Ill. App. 3d at 228; see also *Weir v. Ketterer*, 133 Ill. App. 3d 751, 752 (1985) (" 'transaction' means 'every variety of affairs which form the subject of negotiations or actions between the parties.' ") (quoting *La Ham v. Sterling Canning Co.*, 321 Ill. App. 32, 44 (1943)). As such, "transaction" should not be so "narrowly interpreted as to include only those immediate facts from which the cause of action arose." *Jackson*, 363 Ill. App. 3d at 276.

¶ 36    "[W]hen a court examines the transactional prong of the venue statute, two dependent variables must be analyzed in order to determine whether a particular venue is proper." *Rensing*, 367 Ill. App. 3d at 1050; see also *Braun*, 2020 IL App (1st) 200131, ¶ 34 (adopting the "*Rensing* test" for assessment of the transactional prong). "These variables are (1) the nature of the cause of action and (2) the place where the cause of action springs into existence." *Id.*; see also *Jackson*, 363 Ill. App. 3d at 276.

¶ 37                              *i. The Nature of the Cause of Action*

---

[7]Defendants assert, in a footnote, that plaintiffs did not argue before the circuit court that venue was proper under the transactional prong of the venue statute. Our review of the record confirms as much. Nevertheless, it is the defendant who has the burden on a motion to transfer venue, and ultimately, the circuit court determined that defendants had not met their burden with regard to the transactional prong.

¶ 38    As the circuit court observed, the nature of Williams' cause of action is based in negligence, specifically medical malpractice. A plaintiff in a medical malpractice action must prove: " '(1) the standard of care against which the medical professional's conduct must be measured; (2) the defendant's negligent failure to comply with that standard; and (3) that the defendant's negligence proximately caused the injuries for which the plaintiff seeks redress.' " *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292 (2008) (quoting *Sunderman v. Agarwal*, 322 Ill. App. 3d 900, 902 (2001)).

¶ 39    When considering whether venue is proper based on the nature of the cause of action, courts may look to whether the action can be considered local or transitory in nature. See *Johnson v. Compost Products, Inc.*, 314 Ill. App. 3d 231, 238 (2000) (discussing consideration of the subject of the suit in relation to its locality), *abrogated on other grounds by Corral,* 217 Ill. 2d at 150-151. Plaintiffs' specific allegations against Dr. Horn (and through him, LPMA) are that he did not consider the necessity of post-operative intraocular pressure following Williams' surgery, that he failed to evaluate Williams' post-operative decreased visual acuity, that he negligently and untimely diagnosed Williams, that he failed to consider whether steroids were appropriate for him, and that he failed to timely stop the treatment to prevent further medical complications. All of these allegations derive from Dr. Horn's conduct relating to care and treatment while in his office in Oak Brook in Du Page County.

¶ 40    It is true that some of Williams' claims against defendants will likely require the gathering of some evidence from Chicago Cornea Consultants, the entity that provided Williams with a different diagnosis and which apparently is based in Cook County.[8] However, the surgery and the

---

[8]However, not even this fact is definitive. A look at the company's website indicates that it has locations not only in Chicago, but also in Highland Park, Hoffman Estates, and Crystal Lake, which are situated in Lake County, Cook County, and McHenry County, respectively. See *Braun*, 2020 IL App (1st) 200131, ¶ 36 (utilizing non-resident defendant company website as proper source of judicial notice).

allegedly negligent post-operative care provided by Dr. Horn were conducted solely in Du Page County, and those are the allegations that constitute the integral part of the medical malpractice claim. Thus, a majority of the evidence used to support the claim will implicate the care and treatment rendered there. See *Braun*, 2020 IL App (1st) 200131, ¶ 34 ("[A]ny element, and the facts supporting it, [is what] the plaintiff must prove to sustain his or her cause of action *** to establish venue.").

¶ 41 Accordingly, based on the express language of the complaint and our review of the record, even if *some* part of the medical malpractice action might involve evidence derived from Cook County, the record demonstrates that the nature of the cause of action is centered primarily on allegedly negligent care that was rendered in Du Page County.

¶ 42 *ii. The Place Where the Action Sprang Into Existence*

¶ 43 The second variable to be considered under the transactional prong is where the action "sprang into existence." *Jackson*, 363 Ill. App. 3d at 276; see also *Braun*, 2020 IL App (1st) 200131, ¶ 34. Here, courts look to where "the parties carried on significant negotiations or signed an agreement, or where the agreed-upon action was supposed to be or was performed." *Jackson*, 363 Ill. App. 3d at 276. "This is generally the location where the parties engaged in direct adversarial dealing or where an event occurred that changed the parties' legal relationship." *Id.* "Preparatory or preliminary acts, without more, are insufficient to invoke transactional venue." *Id.* "However, third-party dealings that have a definite and direct bearing on the cause of action may be considered a part of the transaction out of which the cause of action arose." *Id.*

---

However, again, no party appears to dispute that the specific location to which Williams was referred was in Chicago.

¶ 44    Defendants argue that plaintiffs' cause of action "sprang into existence" when Dr. Horn allegedly provided negligent treatment of Williams in Du Page County. Defendants point out that Williams and Dr. Horn never interacted in Cook County, and that all "agreed upon action," *i.e.*, meetings and treatment, took place in Du Page County, which included Williams' pre-operative treatment, surgery, and post-operative care. Citing the Fourth District's case of *Jackson v. Reid*, 363 Ill. App. 3d 271 (2006), as instructive, defendants further contend that any subsequent medical treatment by Chicago Cornea Consultants is irrelevant to the analysis, because plaintiffs do not allege that such treatment there was improper or negligent, and that in this case, any subsequent treatment "does not have any impact on the legal relationship" of the parties.

¶ 45    Defendants also take aim at the several cases relied upon by the circuit court in reaching its decision, among them, *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226 (1995), and *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652 (2010), which we discuss in some detail later. Defendants argue that the facts of those cases are distinguishable, specifically where venue in another county other than where the initial medical procedure was performed was found to be proper only when post-operative care contributed to plaintiffs' medical injuries, or where the care caused a distinctive injury on its own.

¶ 46    Plaintiffs respond that defendants cannot so easily discount Williams' subsequent treatment at Chicago Cornea Consultants, given that Dr. Horn was the one who referred Williams to the entity after Williams experienced ongoing vision problems. Further, plaintiffs point out, it was only there that Williams actually received a proper diagnosis. Plaintiffs also contend that the defendants' reliance on *Jackson* is misplaced, and that the circuit court correctly interpreted *Kaiser and Tipton* as directly on point with the facts here.

¶ 47 We turn to the record to examine where the parties carried on significant negotiations, or signed an agreement, where the agreed upon action was performed, or where an event occurred that changed the parties' relationships, to find where Williams' complaint sprang into existence. See *Jackson*, 363 Ill. App. 3d at 276. The record reflects that, per an affidavit signed by Williams, he did not seek out LASIK surgery directly through Dr. Horn, but through a website. The record contains a signed intake form with the logo "LasikPlus" at the top of the document, which indicates that Williams found such services through Facebook. With regard to his agreement for services, the record reflects that he signed a form for services on October 5, 2019, that again bore the name "LasikPlus" but not Dr. Horn's name specifically, and it also did not indicate where he was when he signed it. Finally, the record also contains a "surgery checklist" which was apparently signed on October 25, 2019, and indicates that the surgery was in "Oakbrook," but again does not indicate where it was signed.

¶ 48 However, and as we noted earlier, "preparatory or preliminary acts, without more, are insufficient to invoke transactional venue." *Jackson*, 363 Ill. App. 3d at 276. Further, the parties do not dispute that the surgery was performed in Du Page County, which is the underlying event that spurred Williams' further medical issues and thus altered his relationship with Dr. Horn and LPMA. It is also undisputed that Williams continued to seek treatment with Dr. Horn after the surgery, and Dr. Horn averred that he only saw Williams in his Oak Brook office in Du Page County. It also does not appear to be in contention that Dr. Horn's referral of Williams to a third-party entity also occurred in Du Page County during a follow-up appointment.

¶ 49 We acknowledge that the record shows that Williams, after being referred by Dr. Horn to Chicago Cornea Consultants, ultimately received another diagnosis for his vision issues that was distinctive from Dr. Horn's assessment, which will likely play into the analysis of whether Dr.

Horn adhered to the applicable standard of care as the case moves forward. See *Jackson*, 363 Ill. App. 3d at 276 ("Third-party dealings that have a definite and direct bearing on the cause of action may be considered a part of the transaction out of which the cause of action arose."). However, contrary to the circuit court's determination, plaintiffs do not allege in their amended complaint that Williams sustained any other additional injuries while in the care of Chicago Cornea Consultants, only that the entity rendered its own separate diagnosis that was distinctive from the one given by Dr. Horn. *Contra Kaiser v. Doll-Pollard*, 398 Ill. App. 3d at 661 (defendant's injuries from an allegedly negligent hysterectomy may have been further exacerbated by a second exploratory surgery by another set of doctors, thus resulting in a "cumulative injury" where it may be difficult to attribute responsibility); see also *Weir*, 133 Ill. App. 3d at 752 (venue proper in the county where plaintiff received additional injuries during an allegedly negligent ambulance transport); see also *Alsup v. Sycamore Municipal Hospital*, 249 Ill. App. 3d 65, 69-70 (1993) (venue may be proper in more than one county if injured plaintiff sues two hospitals situated in different counties, and it is not yet discernible what portions of the alleged injuries are attributable to either one).

¶ 50      On this point, we, like defendants, find *Jackson* instructive. In *Jackson*, the plaintiff filed a medical malpractice complaint in McLean County, alleging that the defendant doctor negligently performed a bilateral ureteral implantation surgery. 363 Ill. App. 3d at 273. The defendant moved to transfer the case to Peoria County, arguing that she had never resided or practiced medicine in McLean County, and that she had performed all care and treatment in Peoria County. *Id.* Plaintiffs countered that the doctor had reviewed certain medical records and tests results procured from a medical center in McLean County, and that she had ordered certain tests to be performed in McLean County. *Id.* at 273-274. The circuit court denied defendant's motion and found that venue

was also proper in McLean County because a portion of the daughter's care, both pre-operatively and over several years, had been performed there. *Id.* at 274.

¶ 51    On appeal, the *Jackson* court reversed the circuit court and agreed with defendants that proper venue was situated in Peoria County. *Id.* at 277. The court reasoned that nothing in the record indicated any direct dealings between the parties in McLean, as the doctor did not reside or provide any direct treatment in McLean, and that all relevant events relating to care and treatment took place in Peoria County. *Id.* at 276. Further, the court observed that the allegations of negligence were aimed at the surgery itself, and thus the integral parts of the cause of action would include whether the surgical procedure was necessary, as well the actual performance of the procedure and post-operative care. *Id.* at 277.

¶ 52    The *Jackson* court also rejected the plaintiffs' claims that the tests ordered by the doctor to be performed by third parties in McLean County were sufficient to constitute an "integral" part of the action. *Id.* Specifically, the court noted that the complaint did not allege that there had been any wrongdoing associated with such testing; rather, what was of concern was the doctor's *interpretation* of the test results, and not the mere occurrence of the testing, that had formed the basis to perform the procedure. *Id.* Therefore, the court concluded that all relevant conduct and decision making by the doctor had been made in Peoria County. *Id.*

¶ 53    We acknowledge that the third-party interaction at issue in *Jackson* concerned pre-operative care, and here, it is alleged that Chicago Cornea Consulting provided post-operative care. However, we find this to be a distinction without a difference. Like in *Jackson*, the third party's role here was relatively inconsequential to the underlying cause as alleged in the complaint. Chicago Cornea Consultant's only involvement with Williams came after Dr. Horn referred Williams for further evaluation outside of his care, and thus after he had performed the surgery

and performed allegedly negligent post-operative treatment in Du Page County. Further, and most significantly, the plaintiff in *Jackson,* like plaintiff Williams here*,* did not allege that any improper care was rendered by any of the third parties.

¶ 54    On that point, plaintiffs' cited case of *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652 (2010), a case from the Fifth District, highlights this key distinction and thus undercuts their argument. In *Kaiser*, the plaintiff underwent a hysterectomy in Clinton County, but was transferred by the defendant doctor to a hospital in St. Clair County for post-operative care following extensive bleeding. *Id.* at 653. The defendant doctor's notes indicated that the bleeding had been identified during the procedure, but the doctor nevertheless closed the patient up while the bleeding was still occurring. *Id.* After the plaintiff's condition worsened following surgery, another doctor transferred the patient to a different hospital, where the doctors there performed exploratory surgery, located the source of bleeding, and were able to stop it. *Id.* However, the plaintiff alleged that she had suffered permanent injuries, not just during the original procedure, but also during the second surgery. *Id.*

¶ 55    After the plaintiff filed a complaint in St. Clair County, the defendants moved to transfer venue to Clinton County, arguing that the plaintiff had not alleged that any of the defendants had committed any negligent acts in St. Clair County, and that the cause of action arose in Clinton County. *Id.* at 654. The circuit court denied the motion. *Id.* at 655. On appeal, the Fifth District affirmed the denial of motion. *Id.* at 664. The court characterized the plaintiff's injuries as "cumulative" and stated that it may be impossible, even once the evidence was developed at trial, to determine precisely how much of the injury occurred in one county over the other. *Id.* at 659. Although the court acknowledged that the plaintiff had not alleged that the second set of doctors in St. Clair County were expressly negligent, it noted that any injuries that might have occurred in

St. Clair County could possibly be attributable to the intervening acts of third parties, as incident to the risk created by the original physician. *Id.* at 659. The court also reasoned that the original doctor's duty of care also included postoperative treatment until the plaintiff was well enough to be released from the hospital, and thus, the care she received in St. Clair County was still an "integral" part of the surgery that the original doctor had performed. *Id.* at 662, 660.

¶ 56    Here, Williams does not allege that Chicago Cornea Consultants was negligent or contributed to any further injuries that resulted from his surgery, treatment, and care in Du Page County. It is reasonable to assume that his vision complications became worse as time went on, but there is nothing in the record to demonstrate that the third party rendered any other care or treatment that was attributable to any additional injuries suffered by Williams that could be considered cumulative in nature. Rather, the amended complaint simply alleges that he received a new diagnosis there. Thus, unlike in *Kaiser*, Williams' relationship with Chicago Cornea Consultants also did not constitute an integral part of his cause of action.

¶ 57    We also find plaintiffs' other cited authority, specifically *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226 (1995), unavailing. In *Tipton*, the plaintiff was a resident of Cook County who ingested a drug prescribed by his defendant doctor in Du Page County. *Id.* at 227. The plaintiff ingested the drug in Cook County for about ten years and then suffered a stroke there and was subsequently admitted to a Chicago-based hospital where he fell into a coma and underwent brain and lung surgery. *Id.* at 227-228. Ultimately, the plaintiff's stroke rendered him partially paralyzed and brain damaged. *Id.* at 228.

¶ 58    After plaintiffs filed suit in Cook County, defendants moved to transfer the case to Du Page County, arguing that all defendants were residents there and that the prescription determination and dispensation had occurred in Du Page County. *Id.* at 228. The circuit court granted the motion.

On appeal, the *Tipton* court reversed the circuit court, reasoning that the plaintiff did not have a cause of action against the doctor *until* he had suffered a stroke in Cook County, which allegedly had been triggered by the ingestion of the prescribed medication. *Id.* The court also pointed to the fact that the medication had been ingested continually in Cook County, and that a vast number of witnesses to the action, such as the Chicago-based hospital where he received care, also resided in or were employed in Cook County. *Id.*

¶ 59 *Tipton* is distinguishable. In *Tipton*, the plaintiff's cause of action only arose *after* he suffered a stroke in Cook County, even if he had been ingesting the same medication for at least ten years. *Id.* at 228. Here, unlike the plaintiff in *Tipton*, the triggering event for Williams' injuries was the surgery that took place in Du Page County, and as the complaint alleges, any further injuries were created or exacerbated by Dr. Horn's continued assessment and diagnosis of Williams' symptoms in Du Page County. Even if Williams' injuries became more pronounced or worsened in Cook County, the allegations of the complaint indicate that their origins were based in Dr. Horn's allegedly incorrect assessment of his concerns and failure to consider Williams' possible sensitivity to steroids.

¶ 60 Ultimately, the purpose of the venue statute is to "protect a defendant from having to defend a lawsuit in a county with little or no relation to the defendant or the transaction that is the subject of the lawsuit." *Terada*, 2015 IL App (5th) 140170, ¶ 35 (quoting *Kaiser*, 398 Ill. App. 3d at 662)). Although the record shows that Williams received a contrary diagnosis from a third party in Cook County, the subject of the lawsuit centers on the care and treatment provided to Williams in Du Page County. Simply put, the integral parts of the underlying medical malpractice action are based on what he alleges to be an insufficient standard of care in relation to his surgery and follow-up procedures, all conducted in Du Page County.

¶ 61    Moreover, there is no evidence in the record to support the circuit court's finding that *additional* injury was sustained in Cook County, other than worsening symptoms that resulted from allegedly improper diagnoses and treatment. But the continued experience of worsening symptoms, without possible attribution to another party where the plaintiff seeks to bring his or her claims, is an insufficient basis to establish venue there. Such a holding would grant leeway for any plaintiff who has suffered an injury in one county to establish venue in another, simply because they have traveled from one county to another, felt the effects of their injuries in another location, or attempted to get a second medical opinion elsewhere. That cannot have been the intent of the legislature when drafting a statute primarily focused on the convenience of the defendant in the litigation of such actions. See *Tabirta,* 2020 IL 124798, ¶ 16.

¶ 62    Although we are mindful of the deference granted to lower courts when assessing their factual findings on a motion to transfer venue, we cannot say that the record supports the circuit court's legal conclusion that additional injuries were suffered in Cook County to sufficiently establish proper venue. Further, as our ultimate review of the court's decision is *de novo* and given that the statute is meant to be construed "liberally in favor of effecting a change of venue," we do reach a different finding on this record. See *Tabirta*, 2020 IL 124798, ¶ 17. We conclude that defendants did meet their burden in establishing that venue was not proper in Cook County. Accordingly, we hold that the circuit court erred in denying defendants' motion and find that venue is proper in Du Page County.

¶ 63                                  2. The Residency Prong

¶ 64    Although we find that defendants met their burden with respect to the transactional prong of the venue statute, we need not, but briefly comment on whether defendants met their burden on the residency prong of the statute. But see *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d

335, 343 (2003) (court noting that although venue was not proper under the residency prong of the venue statute, it still needed to determine whether venue was proper under the transaction prong, despite acknowledging that venue is proper under the statute "where one of two requirements are satisfied.") Here, in its ruling, the circuit court noted that it was uncontested that defendant Dr. Horn is not a resident of Cook County and further, that defendant LPMA does not have a registered office in Cook County and does not have any other office in Cook County. The court then expressly found that it was "unnecessary" to determine whether LPMA could be said to be "doing business" in Cook County, and thus it made no factual findings on that aspect of residency.

¶ 65    Here on appeal, defendants contend that LPMA is not "doing business" in Cook County. Citing on our supreme court's early decision in *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321 (1977) in support, defendants assert that the conduct that is sufficient to establish jurisdiction under Illinois' long-arm statute is not sufficient to establish residency under the venue statute. Defendants maintain that the "usual and customary business" of LPMA is to provide medical services, specifically, refractive eye surgical services to its patients, which, according to defendants, occur solely outside of Cook County.

¶ 66    In their response brief, plaintiffs make no mention of defendants' "doing business" argument, focusing instead, and entirely, on the issue of where the underlying transaction took place. Pursuant to our supreme court rules, both appellants and appellees forfeit any points not argued in their initial briefs. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 30, 2020) (stating that points not raised in the opening brief are waived); Ill. S. Ct. R. 341(i) (requiring that appellee briefs must also comply with the requirements of Rule 341(h)(7); see also *Vancura v. Katris*, 238 Ill. 2d 352, 372 (2010) ("Although Rule 341(h)(7) applies on its face only to appellants' briefs before the appellate court, it also applies to appellees' briefs through Rule 341(i) ***.").

¶ 67    Accordingly, we deem any issue regarding whether LPMA is "doing business" in Cook County to have been forfeited for purposes of appellate review, and therefore make no finding as to whether defendants additionally satisfied any burden on this aspect of the residency prong. However, we do find that defendants otherwise satisfied their burden of the residency prong of the venue statute by demonstrating that both Dr. Horn and LMPA are not residents of Cook County.

¶ 68                              III. CONCLUSION

¶ 69    For the reasons stated, we reverse the decision of the circuit court and remand for further proceedings consistent with this order.

¶ 70    Reversed.