NOTICE

Decision filed 10/18/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220687

NO. 5-22-0687

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KEITH STEFANISIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-LA-270 |
| | ) | |
| PRAIRIE STATE ENERGY CAMPUS | ) | |
| MANAGEMENT, INC., and PRAIRIE STATE | ) | |
| GENERATING COMPANY, LLC, | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1 This is an interlocutory appeal from the circuit court of St. Clair County denying the defendants' motion to transfer venue based on section 2-104 of the Code of Civil Procedure (Code) (735 ILCS 5/2-104 (West 2020)) or, in the alternative, under the doctrine of *forum non conveniens*. The defendants, Prairie State Energy Campus Management, Inc., (PSECM) and Prairie State Generating Company, LLC, (Prairie) manufacture energy, and the plaintiff, Keith Stefanisin, was an employee of Prairie prior to being terminated on February 1, 2021. The plaintiff filed suit claiming his termination was retaliation for exercising his rights under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2020)). The defendants filed a motion to transfer venue, which the trial court denied. For the following reasons, we affirm.

1

¶ 2                    I. BACKGROUND

¶ 3    On April 26, 2022, the plaintiff filed a four-count amended complaint against the defendants for retaliatory discharge/compensatory damages and retaliatory discharge/punitive damages willful and wanton conduct against each defendant. Count I against PSECM alleged that the defendant was a corporation in the energy production business located in Marissa, Illinois. PSECM owned land, paid property taxes, had multiple easements, and at all relevant times was doing business in St. Clair County. The plaintiff was an employee of PSECM from April 18, 2011, until February 1, 2022. During this employment, he performed job duties in St. Clair County. On November 14, 2020, the plaintiff sustained severe and permanent injuries in the course and scope of his employment. He exercised his rights under the Act by filing a claim, seeking medical treatment, taking time off work per his doctor's order, and seeking benefits. On February 1, 2022, the plaintiff was terminated from his employment for exercising those rights; he was terminated under the pretext of having been off work in excess of the allotted time for an injury pursuant to company policy. The motive for his termination was retaliation for exercising his rights under the Act. The direct and proximate result of his termination in retaliation for exercising his rights under the Act were (1) he lost substantial wages that he would have otherwise earned and has lost future wages, (2) he lost health and dental insurance coverage, (3) he lost seniority and vacation and sick time, (4) he lost 401(k) benefits and/or pension benefits, and (5) he experienced pain and suffering and emotional distress. Count II against PSECM made substantially similar factual allegations while also alleging that the defendant's conduct in terminating the plaintiff was intentional, willful, and malicious. Counts III and IV mirrored the claims and named Prairie as a defendant.

¶ 4    On May 6, 2022, the defendants filed a motion to transfer venue pursuant to section 2-104 of the Code (735 ILCS 5/2-104 (West 2020)) or, in the alternative, for *forum non conveniens*. The

motion sought to transfer venue to Washington County. The motion alleged that venue was improper in St. Clair County where it was not the county of residence of either defendant nor did any part of the occurrences alleged by the plaintiff occur in St. Clair County. The defendants argued that Washington County was the proper venue as the underlying incidents alleged in the plaintiff's amended complaint occurred in Washington County, and the defendants were headquartered and maintained their operations and offices in Washington County. The motion also asserted that it was within the discretion of the trial court to grant transfer based on the doctrine of *forum non conveniens*. The defendants also filed a memorandum in support of the motion to transfer. In the memorandum, PSECM explained that it is a "shell" company composed of nine non-profit ownership participants. Prairie denied owning or leasing any property in St. Clair County. Prairie operated a water pump facility in St. Clair County that sits on land leased from Ameren by the PSECM participants. Neither of the defendants are parties to the lease. The water pump facility pumps water from the Kaskaskia River to the Prairie facility in Washington County. "The 'facility' consist[ed] of a small, closet-like building with pipes and a pump; there [were] no employees, no desks, no phones, and no running water."

¶ 5　　The plaintiff was a resident of Clinton County and was employed by Prairie in Washington County. In the 10 years the plaintiff worked for Prairie, he worked approximately 2080 hours per year totaling 20,800 hours. The plaintiff logged only 34 hours over the course of eight days in that 10-year period working at the pump house in St. Clair County. The remainder of his employment was spent at the Washington County facility. The plaintiff was injured at the Washington County facility, not at the water pump.

¶ 6　　The defendants argued that the plaintiff was terminated after he exhausted all leave and was unable to return to work. The decision to terminate the plaintiff was made by then chief

3

operating officer (COO) Randy Short at the offices in Washington County. Both defendants are Delaware corporations, registered to do business in Illinois, and residents of Washington County. Prairie had its offices and conducted its business in Washington County. Therefore, the defendants argued that Washington County was the proper venue.

¶ 7    The defendants argued that, in the alternative, transfer was appropriate under the doctrine of *forum non conveniens* where the public and private interest factors favored transfer. Specifically, Washington County was more convenient to the defendants and the majority of witnesses and evidence were located in Washington County. St. Clair County had no interest in resolving the controversy as the defendants were not residents of St. Clair County.

¶ 8    The plaintiff filed a response to the defendants' motion to transfer, arguing that the defendants operated an "other office" in St. Clair County, specifically the pump house. The plaintiff relied on *Melliere v. Luhr Bros., Inc.*, 302 Ill. App. 3d 794 (1999), in arguing that the business conducted by the defendants in St. Clair County was sufficient to establish an "other office." The plaintiff claimed that the airplane hangar in the *Melliere* case was comparable to the pump house here. The plaintiff also asserted that the defendants were "doing business" in St. Clair County where the participants leased land from Ameren in St. Clair County and conducted part of its business there. A hearing was held on the motion, but the hearing was not transcribed.

¶ 9    A bystander report was prepared by Melissa Pesce, counsel for the defendant. Without objection from the plaintiff, the report was presented to the trial court and counsel for both parties worked with the court to supplement and correct the original draft. The court then reviewed and certified the report. The report stated the following. On September 8, 2022, the court held a hearing on the defendants' motions to change venue and for transfer based on *forum non conveniens*. The defendants began with a brief overview of the defendants' company structure explaining that

PSECM was a not-for-profit company that was basically a shell company comprised of nine participant owners who were both municipalities and co-ops. Prairie was the company responsible for the operation of the Prairie State Energy Campus in Washington County. It employed all the employees who ran the energy facility. Prairie did not own property or assets in its own name as all property and assets were held in the name of one or more of the owners. Not all the owners were equal owners.

¶ 10    As to venue, the defendants argued that neither defendant owned any real property, not in St. Clair County or Washington County. The energy facility where the plaintiff was employed was located entirely in Washington County. The defendants acknowledged that they used a pump house facility located in St. Clair County for water, which was used in the energy production process. It sat on approximately 14 acres owned by Ameren. The pump house had "a very small building that [had] a series of pumps inside." There were no phones or desks at the pump house, no employees were located there for work, and it pumped water from the Kaskaskia River to the energy facility in Washington County, which was used during the cooling process. Nothing was designed, sold, or made at the pump house. There was no advertising as there was no electricity sold directly to consumers.

¶ 11    All of the electricity produced at the energy facility in Washington County was produced solely for use by its owner/participants who then each provided the electricity to its own customers and consumers. The defendants pointed to the fact that the plaintiff only worked approximately 30 hours traveling to/from and working on the pump in his 10-year career with the company. The defendants, however, acknowledged that Prairie sent maintenance workers to the pumps almost daily to check that the pumps were functioning properly. Unless maintenance was required, the checks took no more than 10 to 15 minutes.

¶ 12    Unlike the cases relied on by the plaintiff, the defendants argued that there was no special reason that the pump house was located in St. Clair County. The pump house could have been located on any body of water from which water could have been pumped for the cooling process. The location of the pump house was immaterial to the process. The defendants relied on *Tabirta v. Cummings*, 2020 IL 124798, for the proposition than there were not sufficient contacts here to establish venue in St. Clair County. The defendants pointed to the fact that the plaintiff was employed and worked in Washington County and nothing of significance occurred in St. Clair County.

¶ 13    The defendants also argued that it would be improper for the trial court to consider the offices or land owned by the owner-participants because that would be the same as looking to the contacts of shareholders for determining venue for a corporation. That analysis would result in venue being proper almost anywhere. According to the defendants, all of the contacts relevant to the cause of action occurred in Washington County.

¶ 14    As to the issue of *forum non conveniens*, the defendants pointed to the fact that the plaintiff's choice of venue received less deference when, as here, the plaintiff did not reside in the county, and no part of the transaction occurred in the county where the case was filed. The plaintiff was a resident of Clinton County, and all events related to the case occurred in Washington County. The other factors related to *forum non conveniens* also did not support venue in St. Clair County where the citizens of St. Clair County had no interest in deciding this case. The defendants asserted that the factors favored transfer to Washington County.

¶ 15    As to venue, the plaintiff argued that venue was proper in St. Clair County because the defendants admitted that they produced power and sold it in St. Clair County and admitted they owned property in St. Clair County. The defendants operated the pump house in St. Clair County

6

that was integral to their operations because the generating facility could not operate without the water from the pump house. The plaintiff confirmed that maintenance employees employed by the defendants were at the pump house daily to perform work. The defendants' owners also owned property and had offices in St. Clair County. The website the defendants shared advertised that the defendants were located in Marissa in St. Clair County. The plaintiff had attached records from St. Clair County showing Prairie as the owner of a parcel of land in St. Clair County to its response. St. Clair County residents had an interest in a case where the defendants were advertising that they operated from a St. Clair County location.

¶ 16     The trial court then recalled a previous case where it transferred a case involving Prairie to Washington County because it was informed that all of Prairie's facilities were located in Washington County, but it later learned that some of the facilities were actually located in St. Clair County. The plaintiff agreed with the court's assessment. The defendants clarified that, while the mailing address was Marissa, the generating facilities were physically located in Washington County, not St. Clair County, with the exception of the pump house. The defendants also stated that the St. Clair County record attached to the plaintiff's response was not a deed but rather a document that showed that bills and correspondence were sent "in care of" Prairie.

¶ 17     The plaintiff then resumed argument. The plaintiff noted that the relevant inquiry was not the amount of time the plaintiff spent working at the pump house but rather how much time all of the defendants' employees spent there, which was on a daily basis. The water used by the plant was a vital part of the energy production process as the electricity could not be made without the water pumped from St. Clair County to Washington County. The defendants chose the location of the pump house in St. Clair County because of its proximity to the Kaskaskia River. The citizens

of St. Clair County had an interest because the defendants were using water from St. Clair County as a vital part of the electricity production process.

¶ 18 The plaintiff cited to *Melliere*, in support of his argument because the pump house located in St. Clair County where the defendants' employees went everyday constituted an "other office." Like in *Melliere*, the pump house was a fixed location purposefully selected to carry on an activity in furtherance of the company's business activities. Like the defendant in *Melliere*, here, the defendants leased property in St. Clair County that housed and allowed the operation of vital components of the power production equipment. The activities conducted at the pump house were critical to the production and sale of power. Though the defendants leased the land from Ameren, the pump house and the equipment contained therein were nonmovable fixtures owned by the defendants. The plaintiff also distinguished *Gardner v. International Harvester Co.*, 113 Ill. 2d 535 (1986), and *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321 (1977). *Gardner* involved purchases that were a necessary incident to the company's business, and in *Baltimore & Ohio R.R.*, there was no suggestion that the company operated the trains in question in the venue on a scheduled basis.

¶ 19 The trial court next pivoted to the *forum non conveniens* issue and asked the plaintiff to address the private and public interest factors. As for the private interest factors, the plaintiff pointed to the fact that a majority of the witnesses resided in St. Clair County including Tom Foust, the maintenance manager, John Manster, the plaintiff's direct supervisor, and Randy Short, Prairie's COO and manager who fired the plaintiff. The factors regarding the convenience of the suit and access to the witnesses weighed in favor of St. Clair County. Additionally, counsel for the parties were both located closer to St. Clair County. The trial court responded that the location of counsel, though it can be a factor considered by the court, was unimportant here. Also, the court

8

noted that, while in this case the plaintiff's choice of venue was to be given less deference, it was still given some deference.

¶ 20    As to the public interest factors, the plaintiff argued that these factors weighed in favor of St. Clair County where defendants acknowledged owning property in St. Clair County and tax records showed they paid taxes in St. Clair County. St. Clair County residents had an interest in hearing the case where the defendants owned property there and employed many of its residents. The defendants also advertised their location in Marissa, a village located in St. Clair County.

¶ 21    The plaintiff argued that there was greater access to the court system in St. Clair County and that the defendants had failed to prove that the plaintiff's chosen forum was inconvenient. The trial court noted that, while court congestion was a factor for consideration, the statistics often did not reflect the reality of a respective court's docket, and it was therefore generally unpersuaded by congestion arguments. The court also noted that the location of counsel's office was not afforded significant weight.

¶ 22    The defendants agreed that, for the purposes of the venue motion, both defendants had the same contacts with Washington and St. Clair Counties. Further, neither defendant owned property in St. Clair County, and neither had any significant contacts there. The defendants disputed that they had an "other office" in St. Clair County and disputed the plaintiff's assertion that the defendants sold electricity to St. Clair County as all of the electricity produced was distributed to the nine participant owners, and they did not sell the electricity to end consumers. Additionally, the time spent at the pump house by all the employees was insignificant compared to the amount of work done at the generating facility in Washington County. The defendants acknowledged that employees were sent to the pump house for maintenance on a nearly daily basis and that the water

9

was necessary to the cooling process, but alleged that there was nothing unique about the water coming from the Kaskaskia River and that the water could have come from anywhere.

¶ 23    In response, the plaintiff argued that the *Melliere* case was dispositive here as the pump house was like the airplane hangar at issue in that case where the court found that the hangar was an "other office" for venue purposes. The plaintiff summarized his position that venue was proper in St. Clair County where employees were going to the pump house on a daily basis, they were performing work at the pump house, and the water was an essential part of the generating process. The court then took the matter under advisement.

¶ 24    On September 19, 2022, the trial court entered a written order adopting the plaintiff's reasoning and finding that venue was proper in St. Clair County and that transfer was not warranted as the pump house operated by the defendants constituted an "other office," where the defendants were doing business in St. Clair County, and where the public and private interest factors did not warrant transfer under the doctrine of *forum non conveniens*.

¶ 25                                   II. ANALYSIS

¶ 26    The defendants raise two issues on appeal. First, whether the trial court erred in declining to transfer venue to Washington County pursuant to section 2-104 of the Code. Second, whether the court erred in denying the defendants' motion to transfer venue based on *forum non conveniens*.

¶ 27                              A. Statutory Venue

¶ 28    Determination of proper statutory venue pursuant to the Code necessarily raises separate questions of law and fact. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153-54 (2005). In making its determination, a trial court must first look to the facts of the case and then must determine if the statute is satisfied. *Id.* at 154. This creates a two-step process on review. *Id.* First,

the court's underlying factual findings will be reviewed deferentially and will not be disturbed unless they are against the manifest weight of the evidence. *Id.*

> " 'A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence.' [Citation.] A reviewing court must not substitute its own judgment for the judgment of the trier of fact." *Id.* at 155.

The court's conclusions of law are reviewed *de novo*. *Id.*

¶ 29 It is defendants' burden to prove that plaintiff's venue selection was improper. *Id.* In so doing, defendants must provide specific facts, not conclusions, and demonstrate a clear right to the relief requested. *Id.* Section 2-101 of the Code provides that "every action must be commenced (1) in the county of residence of any defendant ***, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2020). Section 2-102 defines the residence of a corporation as "any county in which it has its registered office or other office or is doing business." *Id.* § 2-102(a).

¶ 30 In *Melliere*, this court defined "other office" to include an airplane hangar in St. Clair County as it was an integral part of the Luhr Bros. construction business. *Melliere*, 302 Ill. App. 3d at 799. This court found that an integral part of the business was making and preparing bids. "Without making successful bid proposals, Luhr Bros. would have no construction projects to work and no income." *Id.* There, the company leased a hangar, housed an airplane at the facility, and employed two full-time pilots who reported to work there each day. *Id.* "The employee-pilots use[d] the plane to transport employees to construction jobsites and to various locations to conduct bid-lettings. They also transport[ed] Luhr Bros. employees to industry meetings and conventions."

11

*Id.* This court defined other office as "a fixed place of business at which the affairs of the corporation are conducted in furtherance of a corporate activity." *Id.* at 800.

¶ 31 Here, we find that the pump house and maintenance thereof constitute an "other office" located in St. Clair County as required by the Code and defined in *Melliere*. The defendants sent employees—including the plaintiff on eight occasions—to the pump house daily for maintenance purposes. The water generated from the pump was a "vital part of the energy production process." The company could not produce energy without the water pumped from St. Clair County. The company purposefully chose St. Clair County as the location for the pump house because of the proximity to the Kaskaskia River. The pump house sits on 11.49 acres located in St. Clair County and has an assessed value of $47,293. Lastly, the pump house contains three river forwarding pumps, an acid injection skid, an air compressor and compressor tank, and a motor control center. These facts indicate that the trial court did not err in denying the motion for change of venue.

¶ 32                                                B. *Forum Non Conveniens*

¶ 33 This court has set forth the well-established standards for our review of an order granting or denying a motion to transfer for *forum non conveniens* as follows:

> " ' " 'A trial court's decision on a *forum non conveniens* motion will be reversed only if it can be shown that the trial court abused its discretion in balancing the various factors at issue.' *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). A circuit court abuses its discretion where no reasonable person would take its adopted view. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).
>
> 'Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice.' *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). The doctrine permits the circuit

12

court to decline jurisdiction over a case when trial in another forum would better serve the ends of justice. *Id.* If jurisdiction is so declined, the case must be dismissed because the circuit court lacks the authority to transfer it. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 13. 'The dismissal is conditioned on the plaintiff timely filing the action in the other forum; and the defendant accepting service of process from that court, and waiving any available statute of limitations defense.' *Id.*; see also Ill. S. Ct. R. 187(c)(2) (eff. Jan. 4, 2013). 'Each *forum non conveniens* case must be considered as unique on its facts.' *Langenhorst*, 219 Ill. 2d at 443. 'Every request for transfer based upon *forum non conveniens* must be decided pursuant to an "individualized, case-by-case consideration of convenience and fairness." ' *Gridley*, 217 Ill. 2d at 168 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In determining whether to grant or deny a motion to dismiss on the basis of *forum non conveniens*, the circuit court must balance private interest factors affecting the litigants and public interest factors affecting the administration of the courts. *Dawdy*, 207 Ill. 2d at 172. The private interest factors include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive. *Id.* The public interest factors include the interest in having local controversies decided locally, the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin, and the unfairness of imposing jury duty upon residents of a county with no connection to the litigation. *Id.* at 173.

13

The defendant has the burden of showing that the balance of the relevant public and private interest factors strongly favors a dismissal and transfer (*id.*), and the circuit court must evaluate the totality of the circumstances when determining whether that burden has been met (*Fennell*, 2012 IL 113812, ¶ 17). The relevant factors are not weighed against each other, and no single factor should be emphasized. *Langenhorst*, 219 Ill. 2d at 443-44.

'An additional consideration under the *forum non conveniens* doctrine is deference to the plaintiff's choice of forum.' *Dawdy*, 207 Ill. 2d at 173. It is generally assumed that the plaintiff's choice of forum is convenient, and unless the balance of the relevant factors strongly favor a dismissal, the plaintiff's choice should rarely be disturbed. *Id.* 'However, when the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference.' *Fennell*, 2012 IL 113812, ¶ 18. Moreover, when the plaintiff is foreign to the chosen forum and the action that gives rise to the litigation did not occur in the chosen forum, 'it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.' (Internal quotation marks omitted.) *Dawdy*, 207 Ill. 2d at 174. 'A plaintiff's right to choose a forum "cannot be permitted to override the public interest in, and need for, an orderly, efficiently operated judicial system." ' *Id.* at 175 (quoting *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 123 (1981))." ' " *Wylie v. Schaefer*, 2021 IL App (5th) 200425, ¶ 14 (quoting *Kuhn v. Nicol*, 2020 IL App (5th) 190225, ¶ 11, quoting *Shaw v. Haas*, 2019 IL App (5th) 180588, ¶¶ 15-19).

14

¶ 34 As to *forum non conveniens*, we cannot say that the trial court abused its discretion in finding that the public and private interest factors did not indicate a strong favorability toward Washington County over St. Clair County, the chosen county of the plaintiff. As discussed and reviewed by the trial court, the private and public interest factors did not indicate that a change of venue is necessary. We hereby adopt the reasoning of the trial court and affirm its dismissal of the defendants' motion.

¶ 35                                    III. CONCLUSION

¶ 36 Based on the foregoing, we affirm the order of the circuit court of St. Clair County denying the defendants' motion to transfer venue.


¶ 37 Affirmed.

*Stefanisin v. Prairie State Energy Campus Management, Inc.*, 2023 IL App (5th) 220687

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 22-LA-270; the Hon. Heinz M. Rudolf, Judge, presiding. |
| **Attorneys for Appellant:** | R. Lance Witcher and Melissa M. Pesce, of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., of St. Louis, Missouri, for appellants. |
| **Attorneys for Appellee:** | Thomas C. Rich, Michelle M. Rich, Kristina D. Cooksey, Aaron J. Chappell, and Caitlin R. Rich, of Rich, Rich, Cooksey & Chappell, P.C., of Fairview Heights, for appellee. |